**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. _____**

DELTEC BANK & TRUST LIMITED,

    Plaintiff,

v.

MICHAEL CARBONARA; IBANERA LLC,
and IBANERA PRIVATE LIMITED,

    Defendants.

## COMPLAINT

Plaintiff Deltec Bank & Trust Limited ("Plaintiff" or "Deltec"), by and through its undersigned counsel, files this Complaint against Defendant MICHAEL CARBONARA ("Carbonara"), an individual, and Defendants IBANERA LLC and IBANERA PRIVATE LIMITED (together "Ibanera"; collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. Ibanera is a company formed by Michael Carbonara that claims to provide global connectivity for banking institutions. Carbonara promises that Ibanera can be trusted to transmit various currencies and cryptocurrencies across borders in strict compliance with payment instructions from banks and their clients. Deltec Bank trusted Ibanera to transmit its funds. Instead, Ibanera has stolen them.

2. Ibanera has taken  at least $11,037,306.00 USD, plus at least $7,000,000.00 worth of

1

other fiat that indisputably belong to Deltec. Deltec instructed Ibanera to transmit those funds to Deltec on January 6, 2025, and Ibanera was obligated to send Deltec its funds within three days. However, three days passed, then a week, then a month, as Deltec made continuing requests of escalating urgency, culminating in a demand from counsel. All the while, Ibanera's intermediary promised that Ibanera was working on the payment request.

3.  Then, after more than a month had passed, Ibanera sent a letter arguing that it was somehow contractually entitled to keep funds that it was entrusted to transmit.  After an incredulous response from Deltec's counsel demanding answers, Ibanera abandoned that argument and now contends that Ibanera cannot transmit Deltec's funds because Ibanera is "under audit" in Singapore.

4.  In the midst of Ibanera's shifting pretextual justifications for taking millions of dollars from Deltec, Carbonara launched a new stablecoin, RōM, without disclosing how its development or backing was financed.[1]

5.  Deltec has since learned that Carbonara and a prior company he formed were sued for stealing and dissipating millions of dollars' worth of funds they were entrusted to transmit. *See MCDP Phoenix Svcs. Pte. Ltd. v. First Financial Intl. Bank Inc.*, No. 20-1538, District of Puerto Rico, Docket No. 40, attached as **Exhibit A**.

6.  By this action, Deltec asks the Court to order the immediate release and return of its funds that Ibanera claims to be holding, plus interest, costs, and attorneys' fees.

## THE PARTIES

7.  Plaintiff Deltec is a bank incorporated in The Commonwealth of The Bahamas, and has

---

[1] See https://www.abc27.com/business/press-releases/globenewswire/1001048398/fintech-pioneer-michael-carbonara-unveils-rom-a-new-stablecoin/ as of Feb. 26, 2025.

its principal place of business at Deltec House, Lyford Cay, Nassau, The Bahamas.

8. Defendant IBANERA LLC is registered with FinCEN as a Money Service Business incorporated under the laws of the State of Wyoming, and has its principal place of business at 2120 Carey Ave, Cheyenne, WY 82001.

9. Defendant IBANERA PRIVATE LIMITED is a Major Payments Institution by the Monetary Authority of Singapore, incorporated under the laws of Singapore, and has its principal place of business at 62 Ubi Road #03-16, Singapore 408734.

10. Defendant IBANERA LLC is owned/operated/controlled by two individuals: David Parr ("Parr") and Michael Carbonara ("Carbonara"). Carbonara acts as Ibanera's CEO. Carbonara's office is located in Miami, Florida.

11. Upon information and belief, Defendant Michael Carbonara is a citizen of Florida, residing at 102 NE 2nd St. #112, Boca Raton., Florida. On information and belief, Carbonara has political aspirations with the current administration. On February 13, 2025, Carbonara unveiled his new cryptocurrency, RōM.[2]

## JURISDICTION AND VENUE

12. There is complete diversity of citizenship between Plaintiff and all Defendants in this case. The amount in dispute in this action, exclusive of interest and costs, exceeds the sum of $75,000. Therefore, this Court has jurisdiction over this dispute under 28 U.S.C. § 1332.

13. This Court has personal jurisdiction over Defendants pursuant to Section 28.2 of a Processing Services Agreement (the "PSA") between Deltec and both Ibanera entities, which states:

---

[2] See https://www.abc27.com/business/press-releases/globenewswire/1001048398/fintech-pioneer-michael-carbonara-unveils-rom-a-new-stablecoin/ as of Feb. 26, 2025.

> 28.2 Dispute Resolution. Any dispute, controversy or claim arising out of or relating to this Agreement its breach, termination, or validity, shall be resolved in the state or federal courts located in the State of Florida, USA and Singapore and the Parties hereby consent to jurisdiction of these courts and waive any objection to venue therein.

14. Venue in this district is proper pursuant to Section 28.2 of the PSA.

## FACTS

15. Plaintiff Deltec is a bank incorporated in The Commonwealth of The Bahamas. To transact business in the United States (among other countries), Deltec enlisted the services of Ibanera, a Money Services Business ("MSB").

16. Defendant Ibanera is a "FinTech enablement platform that provides businesses and institutions with global connectivity for banking and payments."[3] Ibanera is an MSB registered with the U.S. Department of Treasury's Financial Crimes Enforcement Network (FinCEN).[4] Ibanera does not appear to have any state MSB licenses.

17. Deltec and Ibanera entered into the PSA on July 18, 2024.[5]

18. Under the PSA, Ibanera promised to hold Deltec's funds in trust for Deltec, and Deltec would pay Ibanera a fee to process transactions on Deltec's behalf in certain jurisdictions where Deltec required an MSB.

19. Ibanera agreed to provide "transactional payments services (the 'Services')" to Deltec, including:

> Multicurrency Accounts – Ibanera shall issue payment accounts (in USD and any other currency requested by Company) in the name of

---

[3] See https://www.ibanera.com/about as of Feb. 26, 2025.

[4] See *id.*; see also https://www.fincen.gov/msb-state-selector, as of Feb. 27, 2025.

[5] The PSA includes commercial pricing terms that Ibanera may argue fall within the PSA's definition of "Confidential Information" and therefore the PSA has not been attached as an exhibit to this Complaint. Deltec will endeavor to file the PSA under seal in this action shortly, and incorporates the terms of the PSA within this Complaint.

> Company and in the name of Company Clients
>
> Bank transfers – Ibanera shall provide transactional payments services which allow Company and Company Clients to send, receive and transfer funds via the SWIFT payment scheme and any other local payment schemes that may become available;

(PSA, Section 3.)

20. The PSA states, "[u]pon receipt of a Payment Instruction, Ibanera shall be responsible to execute the respective Payment **as soon as possible and in any event by no later than three (3) Business Days in strict accordance and compliance with the Payment Instructions provided by [Deltec]**." (PSA, Section 2.6.)

21. Ibanera is required to hold Deltec's funds in trust for Deltec in a "Segregated Client Account," separate and apart from other accounts. Ibanera promised to hold Deltec's funds in the Segregated Client Account "in trust at all times . . . for and on behalf of" Deltec. (PSA, Section 2.8.) In other words, while Ibanera has possession of Deltec's funds, Deltec at all times has and retains beneficial ownership of the funds.

22. Because Ibanera "holds in trust" funds on behalf of Deltec, it owes fiduciary duties to Deltec, the owner of the funds, and must act with honesty, transparency, and in the best interests of the owner of the funds.

23. As a financial services provider purportedly registered and/or licensed by FinCEN, the Bank of Lithuania and the European Central Bank, the Monetary Authority of Singapore, and the payment networks, Ibanera has a legal and contractual obligation to provide services consistent with the regulatory frameworks governing those authorizations, including settlement and transfer of funds as directed by its customers.

24. Ibanera uses an intermediary agent, io.finnet ("IO"), to process its transfer requests.  At all relevant times, IO acted as Ibanera's agent.

25. On January 6, 2025, Deltec instructed Ibanera, through IO, to transfer millions in mixed fiat from Deltec's Segregated Client Account at Ibanera to Deltec's account with BTG.

26. That same day, IO confirmed the transaction request, and Deltec instructed IO and Ibanera to proceed.

27. However, Ibanera did not release the funds.

28. On January 8, 2025, Deltec reached out to IO and Ibanera to check on the status of the transfer. Deltec received no response.

29. On January 13, 2025, Deltec again reached out to IO and Ibanera regarding the transfers, noting that they were urgent.

30. IO responded to Deltec that day, acknowledging Deltec's request and stating that "Ibanera Treasury is currently addressing your request, and we will revert as soon as we receive an update on the actions taken by Treasury team." Ibanera did not provide any details regarding the delay.

31. On January 15, 2025, the funds still had not been transferred from Deltec's Segregated Client Account at Ibanera. Deltec followed up with IO and Ibanera again. Deltec told IO and Ibanera: "Please note that some of these currency transfers are being executed to cover overdraft balances, which we are accruing overdraft interest daily." Deltec made it clear that it was "critical" that these transfers occur as soon as possible.

32. The following day, January 16, 2025, IO responded to Deltec. IO apologized for the delay, said they had escalated Deltec's request with Ibanera, and that "[w]e understand the urgency of the matter and will keep you updated as soon as we receive further information."

33. Ibanera still did not release Deltec's funds.

34. On January 31, 2025, Deltec requested the transfer for the sixth time. Deltec emphasized

how it was being harmed by Ibanera's failure to release the funds: "[w]e have overdrawn accounts and pending outgoing wires to execute and the required funds are being held by Ibanera." Deltec requested that the funds be released by February 4, 2025, and once again emphasized the urgent nature of the transfer, stating "we have been more than considera[t]e in getting the below transfers out of Ibanera, however it is now past that urgent level and could end up in litigation if these wires are not executed." Deltec also made a new request that Ibanera transfer additional funds from Deltec's international account to its BTG accounts.

35. Ibanera still did not release Deltec's funds, including the additional funds requested, or provide any explanation as to why it did not comply with Deltec's repeated requests for the outstanding transfers.

36. After receiving no response from Ibanera, on February 3, 2025, Deltec's in-house legal counsel, Lanecia Darville, sent a demand letter to Carbonara, with copy to Parr and other Ibanera stakeholders, Bjorn Snorrasson and Jondalar Diepeveen.

37. In the letter, Deltec again demanded the immediate release and transfer of funds held by Ibanera in Deltec's Segregated Client Account. Deltec reiterated that Ibanera's delay in executing Deltec's instructions "impedes our ability to meet our financial obligations to our clients and stakeholders. . . ."

38. On February 11, 2025, Ibanera's outside counsel responded to Deltec's demand letter. Rather than release Deltec's funds, Ibanera claimed **for the first time** that Deltec had somehow "failed to fully comply with all obligations" under the PSA and that Ibanera had "suffered significant losses" of some unspecified nature and amount. No details were provided regarding either Deltec's purported conduct or Ibanera's purported losses. Ibanera claimed that this justified its withholding of *millions* that it was supposed to be holding in trust for Deltec.

39. Ibanera's February 11th letter was the first time Ibanera had provided any reasons (albeit unfounded and pretextual) for withholding Deltec's funds. Said differently, at no time over the course of the many email exchanges checking on the status of the transfer, or at any other time, did Ibanera state that Deltec was in breach of the PSA or that the funds were rightfully and deliberately being withheld. To the contrary, Ibanera claimed to be processing the request.

40. Ibanera's February 11, 2025 letter does not identify a single failure of Deltec to comply with the PSA. Rather, it is clear that Ibanera raised a baseless, after-the-fact pretext in order to attempt to justify the unlawful withholding of Deltec's funds for nearly two months. *Id.*

41. On February 21, 2025, Deltec's outside counsel responded to Ibanera, advising Ibanera that its baseless claims were clearly a pretext to unlawfully hold Deltec's funds. Deltec again demanded the immediate release and transfer of all Deltec funds in Ibanera's possession by February 25, 2025, and demanded an immediate accounting of fraud or loss "[i]f Ibanera has misappropriated and/or otherwise lost or misused those funds."

42. On February 26, 2025, Ibanera's outside counsel replied to Deltec's February 21, 2025 letter, promising that Deltec's "funds are in safeguarded accounts and no one is misusing or misapplying such funds" and that "the funds are segregated and protected."

43. However, Ibanera's justification for withholding the funds now shifted. It now claimed that "Ibanera is under audit at The Development Bank of Singapore Limited ("DBS") and the Monetary Authority of Singapore. Ibanera is also undertaking an internal audit and investigation. Until the investigations are complete, Ibanera needs to preserve the funds in a segregated account."

44. Despite this new excuse for non-performance, Ibanera has no right to withhold Deltec's funds from Deltec—and Ibanera has pointed to no such basis in law or fact. Further, on

information and belief, no such external audit is occurring.

45. On information and belief, Carbonara was aware of Deltec's repeated requests to transfer funds at the time of the requests.

46. On information and belief, Carbonara directed Ibanera not to release Deltec's funds.

47. On information and belief, Ibanera, with the knowledge and at the direction of its CEO Carbonara, has wrongfully taken Deltec's funds with the intention of permanently depriving Deltec of their use.

48. As CEO of Ibanera, Carbonara knew that Ibanera had a fiduciary duty to Deltec to hold its funds in trust. Nevertheless, Carbonara directed Ibanera not to release the funds, knowing these actions would deprive Deltec of the use of its funds.

49. On information and belief, Ibanera knowingly obtained Deltec's funds with the intention of temporarily or permanently appropriating the funds for its own use or the use of Carbonara.

50. On information and belief, Ibanera, with the knowledge and at the direction of its CEO Carbonara, intends to use Deltec's funds to support Carbonara's new cryptocurrency, RōM.

51. Ibanera's failure to release Deltec's funds has led to damages, including at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's breach, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including attorney's fees and costs pursuant to Section 26.2 of the PSA.

52. Deltec's funds must be released and transferred to Deltec without delay to avoid further damage to Deltec.

9

## COUNT I

### Breach of Contract (against Ibanera)

53. Deltec realleges and incorporates by reference its allegations in Paragraphs 1 through 52 as though fully incorporated herein.

54. On July 18, 2024, Deltec and Ibanera entered into the PSA, pursuant to which Ibanera would hold Deltec's funds in trust for Deltec, and Deltec would pay Ibanera a fee to process transactions on Deltec's behalf in certain jurisdictions where Deltec required an MSB.

55. Deltec has duly performed all of its obligations and duties under the PSA.

56. Ibanera has breached the contract by unlawfully withholding Deltec's funds in violation of the PSA, including but not limited to Sections 2.6 and 2.9.

57. On January 6, 2025, January 8, 2025, January 13, 2025, January 15, 2025, January 16, 2025, January 31, 2025, February 3, 2025, and February 21, 2025, Deltec demanded that Ibanera fulfill its obligations under the contract, but Ibanera refused.

58. Ibanera's failure to release Deltec's funds has led to damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's breach, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including attorney's fees and costs pursuant to Section 26.2 of the PSA.

## COUNT II

### Breach of Fiduciary Duty (against Ibanera)

59. Deltec realleges and incorporates by reference its allegations in Paragraphs 1 through 52 as though fully incorporated herein.

60. Under the PSA, Ibanera holds Deltec's funds in trust for Deltec, separate and apart from other accounts. Ibanera promised to hold Deltec's funds "in trust at all times . . . for and on behalf of" Deltec. (PSA, Section 2.9.)

61. Where a party "holds in trust" funds on behalf of another, it owes fiduciary duties to the owner of the funds and must act with honesty, transparency, and in the best interests of the owner of the funds.

62. As a financial services provider purportedly registered and/or licensed by FinCEN, the Bank of Lithuania and the European Central Bank, the Monetary Authority of Singapore, and the payment networks, Ibanera has a legal duty to act in the best interest of its customer, Ibanera.

63. On January 6, 2025, January 8, 2025, January 13, 2025, January 15, 2025, January 16, 2025, January 31, 2025, February 3, 2025, and February 21, 2025, Deltec demanded that Ibanera return its funds, but Ibanera refused.

64. By refusing to transfer Deltec's funds, Ibanera has breached its fiduciary duties to Deltec.

65. Ibanera's breach of its fiduciary duty to Deltec has led to damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's breach, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including attorneys' fees and costs.

### COUNT III
**Aiding and Abetting Breach of Fiduciary Duty (against Michael Carbonara)**

66. Deltec realleges and incorporates by reference its allegations in Paragraphs 1 through 52 though fully incorporated herein.

67. Under the PSA, Ibanera holds Deltec's funds in trust for Deltec, separate and apart from

11

other accounts. Ibanera promised to hold Deltec's funds "in trust at all times . . . for and on behalf of" Deltec. (PSA Section 2.9.).

68. Where a party "holds in trust" funds on behalf of another, it owes fiduciary duties to the owner of the funds and must act with honesty, transparency, and in the best interests of the owner of the funds.

69. As a financial services provider purportedly registered and/or licensed by FinCEN, the Bank of Lithuania and the European Central Bank, the Monetary Authority of Singapore, and the payment networks, Ibanera has a legal duty to act in the best interest of its customer, Ibanera.

70. On January 6, 2025, January 8, 2025, January 13, 2025, January 15, 2025, January 16, 2025, January 31, 2025, February 3, 2025, and February 21, 2025, Deltec demanded that Ibanera return its funds, but Ibanera refused.

71. By refusing to transfer Deltec's funds, Ibanera has breached its fiduciary duties to Deltec.

72. Carbonara was not only aware of Ibanera's breach of its fiduciary duties to Deltec, but willfully aided and abetted Ibanera's breach by directing Ibanera not to release Deltec's funds.

73. Carbonara's aiding and abetting Ibanera's breach of its fiduciary duty to Deltec has led to damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's breach, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including attorneys' fees and costs.

## COUNT IV
### Conversion (against Ibanera)

74. Deltec realleges and incorporates by reference its allegations in Paragraphs 1 through 52

as though fully incorporated herein.

75. Ibanera is obligated to hold in trust Deltec's specifically identifiable funds, separate and apart from other accounts. At all times, the funds held in trust by Ibanera on Deltec's behalf belong to Deltec.

76. On January 6, 2025, January 8, 2025, January 13, 2025, January 15, 2025, January 16, 2025, January 31, 2025, February 3, 2025, and February 21, 2025, Deltec demanded that Ibanera return its funds, but Ibanera refused.

77. Ibanera not only ceased to effectuate transfers in breach of the PSA, it has wrongfully retained control over Deltec's funds held in Deltec's account with Ibanera and deprived Deltec of control over its funds indefinitely.

78. Deltec did not authorize Ibanera to retain Deltec's funds, and Ibanera's unlawful holding of Deltec's funds evidences Ibanera's intention of depriving Deltec of their use.

79. Ibanera's wrongful retention of Deltec's funds have deprived Deltec of the use of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat. Accordingly, Ibanera's failure to release Deltec's funds has led to damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's actions, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including attorneys' fees and costs.

### COUNT V
### Aiding and Abetting Conversion (against Carbonara)

80. Deltec realleges and incorporates by reference its allegations in Paragraphs 1 through 52 as though fully incorporated herein.

81. Ibanera is obligated to hold in trust Deltec's specifically identifiable funds, separate and apart from other accounts. At all times, the funds held in trust by Ibanera on Deltec's behalf belong to Deltec.

82. On January 6, 2025, January 8, 2025, January 13, 2025, January 15, 2025, January 16, 2025, January 31, 2025, February 3, 2025, and February 21, 2025, Deltec demanded that Ibanera return its funds, but Ibanera refused.

83. Ibanera not only ceased to effectuate transfers in breach of the PSA, it has wrongfully retained control over Deltec's funds held in Deltec's account with Ibanera and deprived Deltec of control over its funds indefinitely.

84. Deltec did not authorize Ibanera to retain Deltec's funds, and Ibanera's unlawful holding of Deltec's funds evidences Ibanera's intention of depriving Deltec of their use.

85. Carbonara was aware of Deltec's demands, and knew that failure to release the funds would indefinitely deprive Deltec of control over its funds, but directed Ibanera not to release the funds anyway.

86. Carbonara was not only aware that Ibanera's unlawful holding of Deltec's funds would indefinitely deprive Deltec of the use of such funds, but willfully aided and abetted Ibanera's conversion of Deltec's funds by directing Ibanera not to release Deltec's funds.

87. Carbonara's aiding and abetting of Ibanera's wrongful retention of Deltec's funds have deprived Deltec of the use of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat. Accordingly, Ibanera's failure to release Deltec's funds has led to damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's actions, in an amount of no less than $15,000,000.00 USD due to

interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including attorneys' fees and costs.

## COUNT VI
### Civil Theft (against Ibanera and Carbonara)

88. Deltec realleges and incorporates by reference its allegations in Paragraphs 1 through 52 though fully incorporated herein.

89. Ibanera and Carbonara knowingly obtained Deltec's funds with the intention of temporarily or permanently appropriating the funds for their own use in violation of FSA Section 772.11 when Ibanera, at Carbonara's direction, refused to release the funds as requested by Deltec.

90. Rather than return Deltec's funds as required by law, Ibanera and/or Carbonara intend to use Deltec's funds to support Carbonara's new cryptocurrency, RōM.

91. Deltec sent notice to Ibanera demanding release of its funds no fewer than six times, but Ibanera has not released any of the funds.

92. Ibanera's and/or Carbonara's appropriation of Deltec's funds has led to damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's and/or Carbonara's actions, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including treble damages and attorneys' fees and costs pursuant to FSA § 772.11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against

Defendants, granting Plaintiff the following relief:

1. The entry of judgment in favor of the Plaintiff on each and every cause of action;

2. The immediate release of all of Deltec's funds held with Ibanera;

3. The award of damages in an amount to be calculated but no less than $33,000,000.00 (made up of damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's and/or Carbonara's actions, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions);

4. An order terminating the PSA;

5. The award of costs of the suit and attorney's fees;

6. Treble damages pursuant to FSA § 772.11; and

7. Such other relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues that are so triable.

Dated: March 3, 2025

Respectfully submitted,

**VENABLE LLP**

  s/  *Joseph B. Isenberg*
Joseph B. Isenberg (Bar No. 1018077)
jbisenberg@venable.com
801 Brickell Avenue, Suite 1500
Miami FL 33131
Telephone:  305-349-2396
Facsimile:  305-349-2310

-AND-

16

Desirée Moore
dmoore@venable.com
Abram Moore
amoore@venable.com
227 W Monroe St. #1900
Chicago, IL 60606
*Attorneys for Plaintiff*