# Exhibit C

| | |
|---|---|
| **From:** | Moore, Abram I. |
| **To:** | bjorn@ibanera.com |
| **Cc:** | bjorn.snorrason@ibanera.com; bjornsnorrason@gmail.com; bjorn@dalpay.com; bsnorra@internet.is |
| **Subject:** | Deltec v. Ibanera |
| **Date:** | Monday, April 14, 2025 5:25:18 PM |
| **Attachments:** | DE 001 Complaint(66151099.1).pdf |

Bjorn,

I am counsel for Deltec Bank. As you likely know, Deltec has filed the attached lawsuit in federal court in Florida against Ibanera LLC, Michael Carbonara, and Ibanera Pte. Ltd. seeking the return of its funds.  Please contact me as soon as possible to discuss a potential resolution of the case.  Or, if Ibanera Pte. Ltd is represented by an attorney, please provide the attorney's contact information.

Thank you,

Abe

Abe Moore | Venable LLP
t 312.820.3439 | f 312.820.3401 | m 312.375.8468
227 W. Monroe Street, Suite 1900, Chicago, IL 60606

AMoore@Venable.com | www.Venable.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### CASE NO. _____

DELTEC BANK & TRUST LIMITED,

     Plaintiff,

v.

MICHAEL CARBONARA; IBANERA LLC,
and IBANERA PRIVATE LIMITED,

     Defendants.

## **COMPLAINT**

Plaintiff Deltec Bank & Trust Limited ("Plaintiff" or "Deltec"), by and through its undersigned counsel, files this Complaint against Defendant MICHAEL CARBONARA ("Carbonara"), an individual, and Defendants IBANERA LLC and IBANERA PRIVATE LIMITED (together "Ibanera"; collectively, "Defendants"), and alleges as follows:

## **NATURE OF THE ACTION**

1. Ibanera is a company formed by Michael Carbonara that claims to provide global connectivity for banking institutions. Carbonara promises that Ibanera can be trusted to transmit various currencies and cryptocurrencies across borders in strict compliance with payment instructions from banks and their clients. Deltec Bank trusted Ibanera to transmit its funds. Instead, Ibanera has stolen them.

2. Ibanera has taken at least $11,037,306.00 USD, plus at least $7,000,000.00 worth of

1

other fiat that indisputably belong to Deltec. Deltec instructed Ibanera to transmit those funds to Deltec on January 6, 2025, and Ibanera was obligated to send Deltec its funds within three days. However, three days passed, then a week, then a month, as Deltec made continuing requests of escalating urgency, culminating in a demand from counsel. All the while, Ibanera's intermediary promised that Ibanera was working on the payment request.

3.  Then, after more than a month had passed, Ibanera sent a letter arguing that it was somehow contractually entitled to keep funds that it was entrusted to transmit.  After an incredulous response from Deltec's counsel demanding answers, Ibanera abandoned that argument and now contends that Ibanera cannot transmit Deltec's funds because Ibanera is "under audit" in Singapore.

4.  In the midst of Ibanera's shifting pretextual justifications for taking millions of dollars from Deltec, Carbonara launched a new stablecoin, RōM, without disclosing how its development or backing was financed.[1]

5.  Deltec has since learned that Carbonara and a prior company he formed were sued for stealing and dissipating millions of dollars' worth of funds they were entrusted to transmit. *See MCDP Phoenix Svcs. Pte. Ltd. v. First Financial Intl. Bank Inc.*, No. 20-1538, District of Puerto Rico, Docket No. 40, attached as **Exhibit A**.

6.  By this action, Deltec asks the Court to order the immediate release and return of its funds that Ibanera claims to be holding, plus interest, costs, and attorneys' fees.

## THE PARTIES

7.  Plaintiff Deltec is a bank incorporated in The Commonwealth of The Bahamas, and has

---

[1] See https://www.abc27.com/business/press-releases/globenewswire/1001048398/fintech-pioneer-michael-carbonara-unveils-rom-a-new-stablecoin/ as of Feb. 26, 2025.

its principal place of business at Deltec House, Lyford Cay, Nassau, The Bahamas.

8. Defendant IBANERA LLC is registered with FinCEN as a Money Service Business incorporated under the laws of the State of Wyoming, and has its principal place of business at 2120 Carey Ave, Cheyenne, WY 82001.

9. Defendant IBANERA PRIVATE LIMITED is a Major Payments Institution by the Monetary Authority of Singapore, incorporated under the laws of Singapore, and has its principal place of business at 62 Ubi Road #03-16, Singapore 408734.

10. Defendant IBANERA LLC is owned/operated/controlled by two individuals: David Parr ("Parr") and Michael Carbonara ("Carbonara"). Carbonara acts as Ibanera's CEO. Carbonara's office is located in Miami, Florida.

11. Upon information and belief, Defendant Michael Carbonara is a citizen of Florida, residing at 102 NE 2nd St. #112, Boca Raton., Florida. On information and belief, Carbonara has political aspirations with the current administration. On February 13, 2025, Carbonara unveiled his new cryptocurrency, RōM.[2]

## JURISDICTION AND VENUE

12. There is complete diversity of citizenship between Plaintiff and all Defendants in this case. The amount in dispute in this action, exclusive of interest and costs, exceeds the sum of $75,000. Therefore, this Court has jurisdiction over this dispute under 28 U.S.C. § 1332.

13. This Court has personal jurisdiction over Defendants pursuant to Section 28.2 of a Processing Services Agreement (the "PSA") between Deltec and both Ibanera entities, which states:

---

[2] See https://www.abc27.com/business/press-releases/globenewswire/1001048398/fintech-pioneer-michael-carbonara-unveils-rom-a-new-stablecoin/ as of Feb. 26, 2025.

28.2 Dispute Resolution. Any dispute, controversy or claim arising out of or relating to this Agreement its breach, termination, or validity, shall be resolved in the state or federal courts located in the State of Florida, USA and Singapore and the Parties hereby consent to jurisdiction of these courts and waive any objection to venue therein.

14. Venue in this district is proper pursuant to Section 28.2 of the PSA.

## **FACTS**

15. Plaintiff Deltec is a bank incorporated in The Commonwealth of The Bahamas. To transact business in the United States (among other countries), Deltec enlisted the services of Ibanera, a Money Services Business ("MSB").

16. Defendant Ibanera is a "FinTech enablement platform that provides businesses and institutions with global connectivity for banking and payments."[3] Ibanera is an MSB registered with the U.S. Department of Treasury's Financial Crimes Enforcement Network (FinCEN).[4] Ibanera does not appear to have any state MSB licenses.

17. Deltec and Ibanera entered into the PSA on July 18, 2024.[5]

18. Under the PSA, Ibanera promised to hold Deltec's funds in trust for Deltec, and Deltec would pay Ibanera a fee to process transactions on Deltec's behalf in certain jurisdictions where Deltec required an MSB.

19. Ibanera agreed to provide "transactional payments services (the 'Services')" to Deltec, including:

Multicurrency Accounts – Ibanera shall issue payment accounts (in USD and any other currency requested by Company) in the name of

---

[3] See https://www.ibanera.com/about as of Feb. 26, 2025.
[4] See *id.*; see also https://www.fincen.gov/msb-state-selector, as of Feb. 27, 2025.
[5] The PSA includes commercial pricing terms that Ibanera may argue fall within the PSA's definition of "Confidential Information" and therefore the PSA has not been attached as an exhibit to this Complaint. Deltec will endeavor to file the PSA under seal in this action shortly, and incorporates the terms of the PSA within this Complaint.

Company and in the name of Company Clients

Bank transfers – Ibanera shall provide transactional payments services which allow Company and Company Clients to send, receive and transfer funds via the SWIFT payment scheme and any other local payment schemes that may become available;

(PSA, Section 3.)

20. The PSA states, "[u]pon receipt of a Payment Instruction, Ibanera shall be responsible to execute the respective Payment **as soon as possible and in any event by no later than three (3) Business Days in strict accordance and compliance with the Payment Instructions provided by [Deltec]**." (PSA, Section 2.6.)

21. Ibanera is required to hold Deltec's funds in trust for Deltec in a "Segregated Client Account," separate and apart from other accounts. Ibanera promised to hold Deltec's funds in the Segregated Client Account "in trust at all times . . . for and on behalf of" Deltec. (PSA, Section 2.8.) In other words, while Ibanera has possession of Deltec's funds, Deltec at all times has and retains beneficial ownership of the funds.

22. Because Ibanera "holds in trust" funds on behalf of Deltec, it owes fiduciary duties to Deltec, the owner of the funds, and must act with honesty, transparency, and in the best interests of the owner of the funds.

23. As a financial services provider purportedly registered and/or licensed by FinCEN, the Bank of Lithuania and the European Central Bank, the Monetary Authority of Singapore, and the payment networks, Ibanera has a legal and contractual obligation to provide services consistent with the regulatory frameworks governing those authorizations, including settlement and transfer of funds as directed by its customers.

24. Ibanera uses an intermediary agent, io.finnet ("IO"), to process its transfer requests. At all relevant times, IO acted as Ibanera's agent.

25. On January 6, 2025, Deltec instructed Ibanera, through IO, to transfer millions in mixed fiat from Deltec's Segregated Client Account at Ibanera to Deltec's account with BTG.

26. That same day, IO confirmed the transaction request, and Deltec instructed IO and Ibanera to proceed.

27. However, Ibanera did not release the funds.

28. On January 8, 2025, Deltec reached out to IO and Ibanera to check on the status of the transfer. Deltec received no response.

29. On January 13, 2025, Deltec again reached out to IO and Ibanera regarding the transfers, noting that they were urgent.

30. IO responded to Deltec that day, acknowledging Deltec's request and stating that "Ibanera Treasury is currently addressing your request, and we will revert as soon as we receive an update on the actions taken by Treasury team." Ibanera did not provide any details regarding the delay.

31. On January 15, 2025, the funds still had not been transferred from Deltec's Segregated Client Account at Ibanera. Deltec followed up with IO and Ibanera again. Deltec told IO and Ibanera: "Please note that some of these currency transfers are being executed to cover overdraft balances, which we are accruing overdraft interest daily." Deltec made it clear that it was "critical" that these transfers occur as soon as possible.

32. The following day, January 16, 2025, IO responded to Deltec. IO apologized for the delay, said they had escalated Deltec's request with Ibanera, and that "[w]e understand the urgency of the matter and will keep you updated as soon as we receive further information."

33. Ibanera still did not release Deltec's funds.

34. On January 31, 2025, Deltec requested the transfer for the sixth time. Deltec emphasized

how it was being harmed by Ibanera's failure to release the funds: "[w]e have overdrawn accounts and pending outgoing wires to execute and the required funds are being held by Ibanera." Deltec requested that the funds be released by February 4, 2025, and once again emphasized the urgent nature of the transfer, stating "we have been more than considera[t]e in getting the below transfers out of Ibanera, however it is now past that urgent level and could end up in litigation if these wires are not executed." Deltec also made a new request that Ibanera transfer additional funds from Deltec's international account to its BTG accounts.

35. Ibanera still did not release Deltec's funds, including the additional funds requested, or provide any explanation as to why it did not comply with Deltec's repeated requests for the outstanding transfers.

36. After receiving no response from Ibanera, on February 3, 2025, Deltec's in-house legal counsel, Lanecia Darville, sent a demand letter to Carbonara, with copy to Parr and other Ibanera stakeholders, Bjorn Snorrasson and Jondalar Diepeveen.

37. In the letter, Deltec again demanded the immediate release and transfer of funds held by Ibanera in Deltec's Segregated Client Account. Deltec reiterated that Ibanera's delay in executing Deltec's instructions "impedes our ability to meet our financial obligations to our clients and stakeholders. . . ."

38. On February 11, 2025, Ibanera's outside counsel responded to Deltec's demand letter. Rather than release Deltec's funds, Ibanera claimed **for the first time** that Deltec had somehow "failed to fully comply with all obligations" under the PSA and that Ibanera had "suffered significant losses" of some unspecified nature and amount. No details were provided regarding either Deltec's purported conduct or Ibanera's purported losses. Ibanera claimed that this justified its withholding of *millions* that it was supposed to be holding in trust for Deltec.

39. Ibanera's February 11th letter was the first time Ibanera had provided any reasons (albeit unfounded and pretextual) for withholding Deltec's funds. Said differently, at no time over the course of the many email exchanges checking on the status of the transfer, or at any other time, did Ibanera state that Deltec was in breach of the PSA or that the funds were rightfully and deliberately being withheld. To the contrary, Ibanera claimed to be processing the request.

40. Ibanera's February 11, 2025 letter does not identify a single failure of Deltec to comply with the PSA. Rather, it is clear that Ibanera raised a baseless, after-the-fact pretext in order to attempt to justify the unlawful withholding of Deltec's funds for nearly two months. *Id.*

41. On February 21, 2025, Deltec's outside counsel responded to Ibanera, advising Ibanera that its baseless claims were clearly a pretext to unlawfully hold Deltec's funds. Deltec again demanded the immediate release and transfer of all Deltec funds in Ibanera's possession by February 25, 2025, and demanded an immediate accounting of fraud or loss "[i]f Ibanera has misappropriated and/or otherwise lost or misused those funds."

42. On February 26, 2025, Ibanera's outside counsel replied to Deltec's February 21, 2025 letter, promising that Deltec's "funds are in safeguarded accounts and no one is misusing or misapplying such funds" and that "the funds are segregated and protected."

43. However, Ibanera's justification for withholding the funds now shifted. It now claimed that "Ibanera is under audit at The Development Bank of Singapore Limited ("DBS") and the Monetary Authority of Singapore. Ibanera is also undertaking an internal audit and investigation. Until the investigations are complete, Ibanera needs to preserve the funds in a segregated account."

44. Despite this new excuse for non-performance, Ibanera has no right to withhold Deltec's funds from Deltec—and Ibanera has pointed to no such basis in law or fact. Further, on

information and belief, no such external audit is occurring.

45. On information and belief, Carbonara was aware of Deltec's repeated requests to transfer funds at the time of the requests.

46. On information and belief, Carbonara directed Ibanera not to release Deltec's funds.

47. On information and belief, Ibanera, with the knowledge and at the direction of its CEO Carbonara, has wrongfully taken Deltec's funds with the intention of permanently depriving Deltec of their use.

48. As CEO of Ibanera, Carbonara knew that Ibanera had a fiduciary duty to Deltec to hold its funds in trust. Nevertheless, Carbonara directed Ibanera not to release the funds, knowing these actions would deprive Deltec of the use of its funds.

49. On information and belief, Ibanera knowingly obtained Deltec's funds with the intention of temporarily or permanently appropriating the funds for its own use or the use of Carbonara.

50. On information and belief, Ibanera, with the knowledge and at the direction of its CEO Carbonara, intends to use Deltec's funds to support Carbonara's new cryptocurrency, RōM.

51. Ibanera's failure to release Deltec's funds has led to damages, including at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's breach, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including attorney's fees and costs pursuant to Section 26.2 of the PSA.

52. Deltec's funds must be released and transferred to Deltec without delay to avoid further damage to Deltec.

## COUNT I

### Breach of Contract (against Ibanera)

53. Deltec realleges and incorporates by reference its allegations in Paragraphs 1 through 52 as though fully incorporated herein.

54. On July 18, 2024, Deltec and Ibanera entered into the PSA, pursuant to which Ibanera would hold Deltec's funds in trust for Deltec, and Deltec would pay Ibanera a fee to process transactions on Deltec's behalf in certain jurisdictions where Deltec required an MSB.

55. Deltec has duly performed all of its obligations and duties under the PSA.

56. Ibanera has breached the contract by unlawfully withholding Deltec's funds in violation of the PSA, including but not limited to Sections 2.6 and 2.9.

57. On January 6, 2025, January 8, 2025, January 13, 2025, January 15, 2025, January 16, 2025, January 31, 2025, February 3, 2025, and February 21, 2025, Deltec demanded that Ibanera fulfill its obligations under the contract, but Ibanera refused.

58. Ibanera's failure to release Deltec's funds has led to damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's breach, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including attorney's fees and costs pursuant to Section 26.2 of the PSA.

## COUNT II

### Breach of Fiduciary Duty (against Ibanera)

59. Deltec realleges and incorporates by reference its allegations in Paragraphs 1 through 52 as though fully incorporated herein.

10

60. Under the PSA, Ibanera holds Deltec's funds in trust for Deltec, separate and apart from other accounts. Ibanera promised to hold Deltec's funds "in trust at all times . . . for and on behalf of" Deltec. (PSA, Section 2.9.)

61. Where a party "holds in trust" funds on behalf of another, it owes fiduciary duties to the owner of the funds and must act with honesty, transparency, and in the best interests of the owner of the funds.

62. As a financial services provider purportedly registered and/or licensed by FinCEN, the Bank of Lithuania and the European Central Bank, the Monetary Authority of Singapore, and the payment networks, Ibanera has a legal duty to act in the best interest of its customer, Ibanera.

63. On January 6, 2025, January 8, 2025, January 13, 2025, January 15, 2025, January 16, 2025, January 31, 2025, February 3, 2025, and February 21, 2025, Deltec demanded that Ibanera return its funds, but Ibanera refused.

64. By refusing to transfer Deltec's funds, Ibanera has breached its fiduciary duties to Deltec.

65. Ibanera's breach of its fiduciary duty to Deltec has led to damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's breach, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including attorneys' fees and costs.

## <u>COUNT III</u>
### Aiding and Abetting Breach of Fiduciary Duty (against Michael Carbonara)

66. Deltec realleges and incorporates by reference its allegations in Paragraphs 1 through 52 though fully incorporated herein.

67. Under the PSA, Ibanera holds Deltec's funds in trust for Deltec, separate and apart from

other accounts. Ibanera promised to hold Deltec's funds "in trust at all times . . . for and on behalf of" Deltec. (PSA Section 2.9.).

68. Where a party "holds in trust" funds on behalf of another, it owes fiduciary duties to the owner of the funds and must act with honesty, transparency, and in the best interests of the owner of the funds.

69. As a financial services provider purportedly registered and/or licensed by FinCEN, the Bank of Lithuania and the European Central Bank, the Monetary Authority of Singapore, and the payment networks, Ibanera has a legal duty to act in the best interest of its customer, Ibanera.

70. On January 6, 2025, January 8, 2025, January 13, 2025, January 15, 2025, January 16, 2025, January 31, 2025, February 3, 2025, and February 21, 2025, Deltec demanded that Ibanera return its funds, but Ibanera refused.

71. By refusing to transfer Deltec's funds, Ibanera has breached its fiduciary duties to Deltec.

72. Carbonara was not only aware of Ibanera's breach of its fiduciary duties to Deltec, but willfully aided and abetted Ibanera's breach by directing Ibanera not to release Deltec's funds.

73. Carbonara's aiding and abetting Ibanera's breach of its fiduciary duty to Deltec has led to damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's breach, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including attorneys' fees and costs.

## COUNT IV
### Conversion (against Ibanera)

74. Deltec realleges and incorporates by reference its allegations in Paragraphs 1 through 52

as though fully incorporated herein.

75. Ibanera is obligated to hold in trust Deltec's specifically identifiable funds, separate and apart from other accounts. At all times, the funds held in trust by Ibanera on Deltec's behalf belong to Deltec.

76. On January 6, 2025, January 8, 2025, January 13, 2025, January 15, 2025, January 16, 2025, January 31, 2025, February 3, 2025, and February 21, 2025, Deltec demanded that Ibanera return its funds, but Ibanera refused.

77. Ibanera not only ceased to effectuate transfers in breach of the PSA, it has wrongfully retained control over Deltec's funds held in Deltec's account with Ibanera and deprived Deltec of control over its funds indefinitely.

78. Deltec did not authorize Ibanera to retain Deltec's funds, and Ibanera's unlawful holding of Deltec's funds evidences Ibanera's intention of depriving Deltec of their use.

79. Ibanera's wrongful retention of Deltec's funds have deprived Deltec of the use of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat. Accordingly, Ibanera's failure to release Deltec's funds has led to damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's actions, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including attorneys' fees and costs.

### <u>COUNT V</u>
### Aiding and Abetting Conversion (against Carbonara)

80. Deltec realleges and incorporates by reference its allegations in Paragraphs 1 through 52 as though fully incorporated herein.

81. Ibanera is obligated to hold in trust Deltec's specifically identifiable funds, separate and apart from other accounts. At all times, the funds held in trust by Ibanera on Deltec's behalf belong to Deltec.

82. On January 6, 2025, January 8, 2025, January 13, 2025, January 15, 2025, January 16, 2025, January 31, 2025, February 3, 2025, and February 21, 2025, Deltec demanded that Ibanera return its funds, but Ibanera refused.

83. Ibanera not only ceased to effectuate transfers in breach of the PSA, it has wrongfully retained control over Deltec's funds held in Deltec's account with Ibanera and deprived Deltec of control over its funds indefinitely.

84. Deltec did not authorize Ibanera to retain Deltec's funds, and Ibanera's unlawful holding of Deltec's funds evidences Ibanera's intention of depriving Deltec of their use.

85. Carbonara was aware of Deltec's demands, and knew that failure to release the funds would indefinitely deprive Deltec of control over its funds, but directed Ibanera not to release the funds anyway.

86. Carbonara was not only aware that Ibanera's unlawful holding of Deltec's funds would indefinitely deprive Deltec of the use of such funds, but willfully aided and abetted Ibanera's conversion of Deltec's funds by directing Ibanera not to release Deltec's funds.

87. Carbonara's aiding and abetting of Ibanera's wrongful retention of Deltec's funds have deprived Deltec of the use of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat. Accordingly, Ibanera's failure to release Deltec's funds has led to damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's actions, in an amount of no less than $15,000,000.00 USD due to

interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including attorneys' fees and costs.

## COUNT VI
### Civil Theft (against Ibanera and Carbonara)

88. Deltec realleges and incorporates by reference its allegations in Paragraphs 1 through 52 though fully incorporated herein.

89. Ibanera and Carbonara knowingly obtained Deltec's funds with the intention of temporarily or permanently appropriating the funds for their own use in violation of FSA Section 772.11 when Ibanera, at Carbonara's direction, refused to release the funds as requested by Deltec.

90. Rather than return Deltec's funds as required by law, Ibanera and/or Carbonara intend to use Deltec's funds to support Carbonara's new cryptocurrency, RōM.

91. Deltec sent notice to Ibanera demanding release of its funds no fewer than six times, but Ibanera has not released any of the funds.

92. Ibanera's and/or Carbonara's appropriation of Deltec's funds has led to damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's and/or Carbonara's actions, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions, including treble damages and attorneys' fees and costs pursuant to FSA § 772.11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against

Defendants, granting Plaintiff the following relief:

1. The entry of judgment in favor of the Plaintiff on each and every cause of action;

2. The immediate release of all of Deltec's funds held with Ibanera;

3. The award of damages in an amount to be calculated but no less than $33,000,000.00 (made up of damages of at least $11,037,306.00 USD plus more than $7,000,000.00 worth of other fiat, interest on the unlawfully withheld funds, and the additional damages that Deltec has suffered and will continue to suffer as a result of Ibanera's and/or Carbonara's actions, in an amount of no less than $15,000,000.00 USD due to interruption of services, interference with business relationships, third party claims, and other damages suffered as a result of Ibanera's actions);

4. An order terminating the PSA;

5. The award of costs of the suit and attorney's fees;

6. Treble damages pursuant to FSA § 772.11; and

7. Such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues that are so triable.

Dated: March 3, 2025

Respectfully submitted,

**VENABLE LLP**

  s/ *Joseph B. Isenberg*
Joseph B. Isenberg (Bar No. 1018077)
jbisenberg@venable.com
801 Brickell Avenue, Suite 1500
Miami FL 33131
Telephone:  305-349-2396
Facsimile:  305-349-2310

-AND-

Desirée Moore
dmoore@venable.com
Abram Moore
amoore@venable.com
227 W Monroe St. #1900
Chicago, IL 60606
*Attorneys for Plaintiff*

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MCDP PHOENIX SERVICES PTE. LTD.** | |
| Plaintiff, | |
| **FIRST FINANCE INTERNATIONAL BANK, INC.** | CIVIL NO. 20-1538 (RAM) |
| Defendant, | |
| and | |
| **B HIGH HOUSE INTERNATIONAL PTE. LTD.,** | |
| Proposed Plaintiff-Intervenor | |

## MOTION TO INTERVENE AND TO STAY PROCEEDINGS AS TO DISBURSAL OF FUNDS

**TO THIS HONORABLE COURT:**

**COMES NOW** proposed plaintiff-intervenor B High House International, PTE, Ltd. (hereinafter "BHHI"), through its undersigned attorneys, and respectfully requests the court to allow it to intervene in this matter, and in support it states and prays:

### I. Introduction

This case relates to $625,192.66 held by defendant FFIB, which are to be deposited with the court. As stated in MCDP Phoenix Services PTE. LTD.'s ("MCDP") and First Finance International Bank, Inc.'s ("FFIB") pleadings, BHHI and MCDP,

1

Singapore companies, have stated a claim over said funds. In fact, BHHI commenced an action in April 2020 in a Singapore Court, that is linked to the funds at issue, as further discussed in BHHI's proposed pleading tendered with this motion. *See* **Exhibit 1** (Proposed Complaint).

In the Singapore action, BHHI claims that MCDP misappropriated $2,680,535.21. To prevent a miscarriage of justice that will leave BHHI without recourse, BHHI respectfully requests to be allowed to intervene, as of right, in this action, as a plaintiff-intervenor, so that it may assert and protect its interest over the funds now deposited with the court. Fed. R. Civ. P. 24 (a)(2). In the alternative, BHHI request permissive intervention pursuant to Fed. R. Civ. P. 24 (b). Lastly, BHHI requests that the court stay the proceedings pending the rightful disposition of the funds in the Singapore action.

## II. Factual and Procedural Background

### A. MCDP'S MISAPPROPRIATION OF BHHI'S FUNDS

BHHI's function is to manage and collect payments from customers of its principal affiliates with whom they transact online ("Third Party Customers"). In particular, BHHI processes payment transactions and manages, collects, and recovers payments from Third Party Customers by engaging the services of processing agents. When a Third-Party Customer makes an online payment using their debit or credit card, the bank which issued that debit or credit card (the "Issuing Bank") transfers

2

funds to a financial institution known in the processing industry as an "acquiring bank" or "acquirer" ("Acquirer"). The Acquirer receives such funds for the account of a processing agent, which is known as a "Merchant Account." The processing agents who hold such Merchant Accounts are assigned MIDs (short for "Merchant IDs"), unique identification numbers, which serve as gateways between the processing agent and the Acquirer. In performing its role of managing and collecting payments from Third-Party Customers, BHHI engages payment processing agents across the world because it does not itself own or operate MIDs. In general, once the processing agent receives a payment into its Merchant Account, it is entitled to deduct certain processing fees and charges, before transferring the balance of the payment to BHHI.

MCDP was one of BHHI's processing agents and was entrusted to receive funds to then forward to BHHI. In particular, after payments were made from the Issuing Banks, they were to be paid to the Acquirer and, eventually, forward to MCDP for the ultimate benefit of BHHI. MCDP was entitled to retain a certain portion of these funds as processing fees and charges and was then to transfer the rest of the funds to BHHI. MCDP processed some of these funds through a Mexico bank.

MCDP was represented by two individuals named Daniel Berger and Daphne Alfaro, who were at all times BHHI's main points of contact vis-à-vis MCDP. Pursuant to MCDP's engagement as BHHI's processing agent, BHHI caused over US$7.35m worth of payments from Third-Party Customers to be paid to Merchant Accounts

owned or operated by MCDP. These payments were supposed to have been processed and paid over to BHHI on a weekly basis, subject to the deduction of processing fees and charges.

However, from as early as September 2019, MCDP Phoenix fell into a pattern of making delayed and deficient deposits of such funds. MCDP would drip feed partial payments to BHHI but they were, in most instances, far less than the full amount which BHHI was rightfully entitled to receive, such that the outstanding balance of missing funds continued to grow.

BHHI repeatedly sought clarification from Berger and Alfaro on the status and whereabouts of the outstanding funds, but it was not given clear answers or explanations. Around January 2020, Alfaro first gave the excuse that the Trust Monies had been withheld by the Acquirer, whom she claimed to be Banco Ahorro Famsa SA ("**Famsa Bank**"). She, however, provided no documentation to substantiate this assertion. When BHHI pressed Alfaro and Berger for more evidence and details, Berger and Alfaro began to deflect BHHI's queries among themselves, with Berger claiming that Alfaro was answerable for the missing funds, and vice versa.

In total, between around August 30, 2019 to February 4, 2020, MCDP left a shortfall of US$2,680,535.21 in funds which were received by it on behalf of BHHI, but which it failed to transfer to BHHI. BHHI ceased all payment processing through MCDP on February 4, 2020.

To date, BHHI has yet to receive any satisfactory answer as to what had become of the sum of US$2,680,535.21. Alfaro, MCDP, and Mr. Carbonara have completely stonewalled BHHI and their utter refusal to substantiate their claim that the funds had been withheld by Famsa Bank clearly demonstrated that they had simply fabricated an excuse. MCDP had essentially defrauded BHHI of these payments and had either wrongfully withheld, misappropriated, or caused to be misappropriated the total sum of US$2,680,535.21 while purporting to provide these payment processing services to BHHI.

### B. BHHI OBTAINED A WORLD-WIDE INJUNCTION ORDER FROM THE SINGAPORE COURT

On April 24, 2020, BHHI commenced a civil court proceeding ("Singapore Proceeding"), Suit No. 371 of 2020, filed with the High Court of the Republic of Singapore ("Singapore Court") against MCDP and Michael Carbonara ("Mr. Carbonara"), who is MCDP's sole shareholder, managing director, and CEO ("Chief Executive Officer"). Indeed, the suit alleges that MCDP and Mr. Carbonara misappropriated, through fraud, substantial funds belonging to BHHI.

On May 4, 2020, the Singapore Court issued a world-wide injunction order and disclosure order for MCDP's and Mr. Carbonara's assets due to the high-risk that MCDP would dissipate its assets, including the funds belonging to BHHI. *See* **Exhibit 2**. The Singapore Court Order prohibited MCDP and Mr. Carbonara from: (1) removing any assets from Singapore whether in their own name or not and whether solely or

jointly owned up to the value of US$ 2,680,535.21; or (2) in any way dispose of or deal with or diminish the value of any of their assets whether they are in or outside Singapore whether in their own name or not and whether solely or jointly owned up to the same value.

In pertinent part, the order also required them to:

> "inform the Plaintiff in writing at once of all their assets whether in or outside Singapore, **whether in their own name or not** and whether solely or jointly owned, giving the value, location, and details, of all such assets. The information must be confirmed in affidavits which must be filed by each of the Defendants and served on the Plaintiff's solicitors within fourteen (14) days after this Order has been served on that Defendant." Exhibit 2, (emphasis supplied).

Though required to make complete disclosures regarding their world-wide finances, assets, and bank accounts, MCDP and Mr. Carbonara failed to disclose the assets held at FFIB.

BHHI then sought the aid of this court, filed a 28 USC §1782 application, and received an order (directed at FFIB) subpoenaing records related to MCDP's assets held at FFIB. *See* **Exhibit 3** (1782 application, sworn statement, and order).

The accounts that were eventually disclosed included the sum of $625,192.66. *See* Dkt. 37.

### C.  BHHI HAS AN STRONG INTEREST IN THE FUNDS HELD AT FFIB

Upon an examination of said records, BHHI found that there were compelling reasons to believe the funds held at FFIB were, in substantial part, funds that should have been paid to BHHI.

The funds held at FFIB in the name of MCDP included a sum of 12,349,789 MXN pesos, deposited on April 16, 2020, from an entity known as "Devolucion de Reservas Feenicia," which in turn appears to be linked to a Mexican financial institution known as Servicios Estrategicos en Tecnologias de Informacion S. de R.L. de C.V. ("**Feenicia**"). BHHI has established, based on its ongoing investigation into the location of the funds, that the processed on its behalf by MCDP were processed through three distinct merchant accounts, two of which were operated by Feenicia. This is a very strong indicator that the funds received into the FFIB account were directly correspond to monies belonging to BHHI. Further, MCDP's own correspondence, dated January 27, 2020 confirms that the funds processed on behalf of BHHI were being processed in Mexican Pesos.

BHHI has also learned that in email correspondence dated April 9, 2020 with FFIB's officers in relation to the setting up of MCDP's account, Mr. Carbonara had mentioned that MCDP had been "*doing 20m per month with famsa last year*" and were "*looking for more solutions now.*" Since the funds held at FFIB appear to be strongly related to the ones siphoned off from BHHI has a direct interest over the funds at issue,

and thus should be allowed to intervene in this matter. BHHI intends to establish at trial in the Singapore Proceeding its rights to the funds held at FFIB and other financial institutions, which were wrongfully siphoned off from BHHI.

Moreover, MCDP has admitted that it intended to use the FFIB funds, supposedly held in escrow for third parties, as collateral for a loan to MCDP secured against such funds. *See*, Dkt. 6, p. 2-3.

After this failed, the FFIB documents show that MCDP intended to send money kept in the FFIB accounts, and which supposedly belong to third parties, to a Morgan Stanley account in the name its CEO, Mr. Carbonara. *See*, Dkt. 20 at ¶20. MCDP ultimately intended for Mr. Carbonara to have possession of said funds; not third parties. This further indicates the FFIB funds were to be used be for inequitable conduct and to further misappropriate funds that did not belong to MCDP.

### D. STATUS OF PROCEEDINGS IN SINGAPORE

The Singapore Proceeding is in an advanced stage. The parties have been actively litigating the case since April 2020. Pleadings have closed such that parties may no longer make any amendments to their pleadings without leave of court. To date, the parties have participated in several interlocutory proceedings before the Singapore Court and active motion practice to set aside the aforementioned injunctions (in which MCDP was unsuccessful), and an application for leave to appeal against the High Court's refusal to set aside the injunctions to the Singapore Court of Appeal (in which

MCDP was also unsuccessful). BHHI has also successfully made an application for certain interrogatories administered by MCDP and Mr. Carbonara to BHHI to be set aside. The parties have provided general discovery and have exchanged requests for specific discovery, which includes an array of requests propounded to MCDP and Carbonara that specifically target the three merchant accounts. BBHI fully anticipates that responses to those requests will further demonstrate the direct connection between funds owed to BHHI and the funds paid into the Court by FFIB in this matter. On their part, MCDP and Mr. Carbonara have applied for, and have obtained, leave to issue a "Third Party Notice" joining Berger as a defendant to the Singapore Proceedings. MCDP and Mr. Carbonara have also made an application for BHHI to furnish security for their costs of defending the action, which is set for hearing on January 12, 2020. The next pre-trial conference has also been set for January 12, 2020 at which the Court is expected to give further procedural and scheduling instructions. Although trial dates have not been set as yet, the parties were directed to attend the next hearing with counsel ready to discuss the number of witnesses each side is likely to call, and their availability for trial. Thus, trial dates will likely be set in the near future.

### III. Argument

**1. BHHI is entitled to intervene in this action as a matter of right.**

Rule 24(a)(2) of the Federal Rules of Civil Procedure governs intervention as a matter of right. That provision provides, in relevant part, that "[o]n timely motion, the

court must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Moreover, under Rule 24(b), a district court may, in its discretion, allow the intervention of any party who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

The First Circuit has identified four requirements for intervention as a matter of right: "the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party." *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7, 74 Fed. R. Serv. 3d 1095 (1st Cir. 2009); *see also*, *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989).

### a.  **The motion is timely.**

Here, the motion is timely.[1] This action is in its early stages. The Verified Complaint was filed on October 8, 2020. FFIB the defendant in this case recently filed its

---

[1] The First Circuit considers the following four factors when adjudicating the timeliness of a petition to intervene – "(i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the prospective intervenors

Answer. Since the case is in its early stages, no prejudice will come to any party for intervening at this time. A trial date has not been set. Yet, the prejudice to BHHI is undeniably since its stake in the funds at issue is at risk. More importantly, since becoming aware of the present lawsuit, BHHI has advised the court and other parties of its intention to intervene in this case. No party has objected to said notice. *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 8, 74 Fed. R. Serv. 3d 1095 (1st Cir. 2009)("the timeliness inquiry centers on how diligently the putative intervenor has acted once he has received actual or constructive notice of the impending threat.").

   b. **BHHI has a legally protected interest in this litigation.**

This action primarily concerns the rightful disposal of property held by FFIB, which is now deposited with the court. BHHI affirmatively alleges that it is a party entitled to the funds, for at least two reasons: 1) there are strong indicators that the funds held at FFIB are, in part, the ones siphoned off from FFIB, and 2) a Singapore Court has determined that there is a real likelihood that MCDP will dissipate its assets. Thus, BHHI's claim bears a "sufficiently close relationship to the dispute between the original litigants" – that is, the proper disposition of the funds at issue. Moreover, said

---

would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention." *Narragansett Indian Tribe v. Ribo, Inc.*, 868 F.2d 5, 7 (1st Cir. 1989)(citation omitted).

interest is not contingent.[2] The funds at issue rightfully belong to BHHI; MCDP fraudulently siphoned them off to FFIB and if entrusted with them will likely dissipate them.

### c. Disposition of this action may as a practical matter impair or impede BHHI's ability to protect its property interest in the funds held by FFIB.

Not being allowed to intervene in this action impairs BHHI's ability to protect its property interest over the funds held at FFIB. A Singapore Court has already found that there is a great likelihood that MCDP will dissipate its assets, including those that rightfully belong to BHHI. *See* **Exhibit 2**. Thus, there is a real threat that BHHI will be left with no recovery if these funds are disbursed to MCDP.

### d. FFIB does not adequately represent BHHI's interests.

Neither MCDP nor FFIB can adequately represent the interest of BHHI. FFIB has requested the court to adjudicate the rightful disposition of the funds at issue while MCDP has asked for the funds to be deposited with the court pending a trial. *See, Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992)(stating that "An intervenor need only show that representation may be inadequate, not that it is inadequate."). As such, neither party is in a position to represent BHHI's interest.

---

[2] An application to intervene should be viewed on the tendered pleadings—that is, whether those pleadings allege a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits. *Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988).

## 2. In the alterative, BHHI requests permission to intervene.

Permissive intervention under Rule 24(b) is allowed upon timely application "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). The First Circuit has noted that the threshold for permissive intervention is low, and that once the threshold requirements are satisfied, the district court may consider "almost any factor rationally relevant." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999). Undoubtedly, the proper disposition of the funds at issue is a central question in this proceeding. BHHI claims a tangible economic interest in the funds at issue. As such BHHI has a direct, significantly protectable interest in the assets that are at issue. The court should allow BHHI to intervene in this matter before the court decides how to dispose of the funds.

## 3. Proceedings in this matter with regards to the disposition of the funds should be stayed pending the resolution of the Singapore Proceeding.

Federal courts have the inherent power to stay an action based on the pendency of a related proceeding in a foreign jurisdiction. *Goldhammcr v. Dunkin Donuts, Inc.,* 59 F.Supp.2d 248, 251-56 (D. Mass. 1999); *Boushel v. Toro Co.,* 985 F.2d 406, 409-10 (8th Cir. 1993). This power must be balanced against "the federal courts' strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Goldhammer v. Dunkin' Donuts, Inc.,* 59 F. Supp. 2d 248, 251 (D. Mass. 1999)(internal citations omitted). "In the interests of judicial economy and international relations, a federal court may stay an

13

action in favor of pending foreign litigation." *Goldhammer*, 59 F. Supp. 2d at 251. (D. Mass. 1999)(internal citations omitted), see also, *Turner Ent'mt. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994)(holding that "in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction.").

Of importance, "[i]n the context of parallel proceedings in a foreign court, a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Royal and Sun Alliance Ins. Co. of Can. v. Century Intern. Arms, Inc.*, 466 F.3d 88, 94 (2nd Cir. 2006).

In *Goldhammer*, the court discussed five factors to consider when deciding to stay a case because of parallel litigation in a foreign forum, namely – "(1) similarity of parties and issues involved in the foreign litigation; (2) the promotion of judicial efficiency; (3) adequacy of relief available in the alternative forum; (4) issues of fairness to and convenience of the parties, counsel, and witnesses; (5) the possibility of prejudice to any of the parties; and (6) the temporal sequence of the filing of the actions." *Goldhammer*, 59 F. Supp. 2d at 252–53; *see also, Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Kozeny*, 115 F. Supp. 2d 1243, 1247 (D. Colo. 2000); *see Boushel* at 409 n. 2 (staying federal action in favor of Quebec action); *see also, EFCO Corp. v. Aluma Systems, USA. Inc.*, 983 F.Supp. 816, 824 (S.D. Iowa 1997)(staying federal action in favor of Canadian

14

action); *Evergreen Marine Corp.* v. *Welgrow International, Inc.*, 954 F.Supp. 101, 103 (S.D. N.Y. 1997)(staying federal action in favor of Belgian litigation).

Further, in *Albemarle Corp. v. AstraZeneca UK, LTD*, No. CIV.A. 5:09-2750, 2010 WL 3893838, at *3 (D.S.C. Sept. 30, 2010), a court decided to stay the case in favor of an English proceeding even though the issue in front of the English court was not dispositive since it "likely will be relevant to the factfinder." Because MCDP and BHHI are litigating similar issues in a previously filed suit in Singapore, the Court should stay the current proceedings.

### a. Similarity of the Parties

In this action, both MCDP and BHHI are seeking the rightful disposition of the assets held at FFIB. And FFIB deposited the money with the court intending the court to "safeguard those funds, protect the interests of all parties involved (including third parties), will prevent any possible violations, and will ensure that those funds are disbursed to the party entitled to those funds." *See* Docket 21 at §15. In the Singapore Proceeding, BHHI has claimed that MCDP has misappropriated funds and siphoned them off to different banking entities. At trial, BHHI will prove that FFIB is one of these banking entities, and the funds, in part, held at FFIB rightfully belong to BHHI. Thus, the issues involved in this case and the Singapore Proceeding are similar.

The Singapore Proceeding is versed on the funds MCDP siphoned off from a Mexico bank and other financial institutions; both the allegations in the Complaint and

the Answer indicate that the origin, ownership, and proper disposition of the funds is at issue. By placing the claims before a single tribunal, thereby reducing duplicative discovery and litigation, the court will advance its interest in an efficient adjudication of the matter. FFIB will also benefit by reducing its exposure since a single court would be adjudicating the proper disposition of the funds at issue.

### b. Promotion of Judicial Efficiency

A stay of this action will promote judicial efficiency by placing MCDP's and BHHI's claims over the property held at FFIB before a single tribunal, thereby reducing duplicative discovery and litigation. *Nat'l Union Fire Ins. Co.* 115 F.Supp.2d at 1247–48 (D.Colo.2000). ("Maintaining two concurrent and simultaneous proceedings… consumes a great amount of judicial, administrative, and party resources for only speculative gain."). More importantly, "simultaneous adjudications regarding identical facts and highly similar legal issues creates the risk of inconsistent judgments." *Id.* at 1248.

### c. Adequacy of relief in the alternative forum

Given that MCDP and BHHI are Singapore citizens, the most appropriate forum to adjudicate this controversy is Singapore. MCDP is already participating in the Singapore Proceeding. A Singapore Court applying Singapore law to adjudicate the controversies between the parties, including whether MCDP used FFIB to siphon off funds belonging to MCDP, will provide the most adequate relief in this action. The facts

16

and timing experienced thus far show that the Singapore Court is moving matters along. BHHI has already obtained injunctive relief and discovery is well advanced. Thus, it is fair to assume that the Singapore Court is the more convenient forum to decide the proper disposition of the funds at issue. This factor weighs heavily in favor of staying the action, to avoid piecemeal litigation, duplicative discovery, and the threat of inconsistent verdicts.

### d. Issues of Fairness to and Convenience of the Parties, Counsel, and Witnesses

Both MCDP and BHHI are Singapore citizens and 38 out of 42 payments which were made by MCDP to BHHI were made by a remittance company known as WorldFirst in Singapore to BHHI's bank account in Singapore. While the witnesses are likely to be scattered among a number of different jurisdictions, pertinently, none of MCDP witnesses appear to be located in Puerto Rico. As indicated, the parties have already participated in an injunction hearing, began preparing discovery, and appeared numerous times in front of the Singapore Court. It is desirable for discovery to take in a single forum under the supervision of a single court. Otherwise, the parties may be forced to produce the same discovery in different jurisdictions and may be subject to contradictory discovery rulings.

### e. Possibility of Prejudice to any of the Parties

As stated, MCDP is already participating in the Singapore Proceeding and has requested as a remedy for the funds to be deposited with the court pending the resolution of its claim with FFIB. When depositing the funds, FFIB has requested the court to ensure the proper disposition of said funds. As such, neither party will suffer significant prejudice from a stay pending the resolution of the proper disposition of the funds in the Singapore Proceeding.

### f. Temporal Sequence of the Filing of the Actions

The Singapore Proceeding was filed in April 2020 about five months before MCDP filed the present action. Discovery is well-underway, an injunction hearing has been held, accompanied by active motion practice by both parties. As such, this factor also militates staying this action pending the final adjudication of the Singapore Proceeding.

### IV. Conclusion

For all the reasons stated herein, this Court has the authority to allow BHHI to intervene in this this matter and to stay the proceeding pending the adjudication of proper disposition of the funds at issue.

Wherefore, BHHI respectfully requests this Honorable Court allow BHHI to intervene in this case and grant a stay of this action pending final resolution of the earlier asserted action in the Singapore Court.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this day of 8th January of 2021.

**MELENDEZ TORRES LAW, PSC**
*Attorneys for B High House International PTE LTD*
MCS Plaza, Suite 1200
255 Ponce de León Avenue
San Juan, PR 00917
Telephone: (787) 281-8100
Fax: (787) 281-8310

*s/Sonia I. Torres Pabón*
USDC-PR No. 209310
storres@melendeztorreslaw.com
*s/Isabel C. Lecompte Shiba*
USDC-PR No. 230714
ilecompte@melendeztorreslaw.com

**CERTIFICATION**

IT IS HEREBY CERTIFIED that on this same date we have electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the Government and all other attorneys of record at their address in the CM/ECF system.

*s/Isabel C. Lecompte Shiba*

19

Exhibit 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MCDP PHOENIX SERVICES PTE. LTD.**<br><br>Plaintiff,<br><br><br>**FIRST FINANCE INTERNATIONAL BANK, INC.**<br><br>Defendant,<br>and<br><br>**B HIGH HOUSE INTERNATIONAL PTE. LTD.,**<br><br>Proposed<br>Plaintiff-Intervenor | CIVIL NO. 20-1538 (RAM) |

## <u>PLAINTIFF'S COMPLAINT IN INTERVENTION</u>

**TO THIS HONORABLE COURT:**

**COMES NOW** plaintiff-intervenor B High House International, PTE, Ltd. (hereinafter "BHHI"), through its undersigned attorneys, and respectfully alleges, states, and prays as follows:

Intervenor BHHI files this complaint in intervention as a party plaintiff, as authorized by Federal Rule of Civil Procedure 24.

## I.   JURISDICTION

1.   This Honorable Court has discretion to exercise supplemental jurisdiction under 28 U.S.C.A. §1367 over the subject matter and over the parties as the claim of the plaintiff-intervenor is derived from a common nucleus of operative facts as the federal original complaint.

2.   This is also an action for declaratory relief pursuant to 28 U.S.C. § 2201 that is brought for the purpose of obtaining a determination of a question in actual controversy between the parties.

3.   Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) since the property at issue can be found in this district.

## II.   PARTIES

1.   Intervenor BHHI is a limited shares company that is a citizen of Singapore.

2.   Plaintiff MCDP Phoenix Services PTE LTD ("MCDP") is a limited shares company that is a citizen of Singapore.

3.   Defendant First Finance International Bank, Inc. ("FFIB") is an international financing institution authorized to do business in the Commonwealth of Puerto Rico.

## III.   FACTS

1.   MCDP carries business where, among other activities, it deposits funds via wire transfer to financial institutions such as FFIB. MCDP then forwards such funds to account as its clients or at times, its creditors, direct.

2

2.      BHHI's function is to manage and collect payments from customers of its principal affiliates with whom they transact online ("Third Party Customers"). When a Third Party Customer makes an online payment using their debit or credit card, the bank which issued that debit or credit card (the "Issuing Bank") transfers funds to a financial institution known in the processing industry as an "acquiring bank" or "acquirer" ("Acquirer"). The Acquirer receives such funds for the account of a processing agent, which is known as a "Merchant Account." The processing agents who hold such Merchant Accounts are assigned MIDs (short for "Merchant IDs"), being unique identification numbers, which serve as gateways between the processing agent and the Acquirer.

3.      In performing its role of managing and collecting payments from Third-Party Customers, BHHI engages payment processing agents across the world because it does not itself own or operate MIDs. In general, once the processing agent receives a payment into its Merchant Account, it is entitled to deduct certain processing fees and charges, before transferring the balance of the payment to BHHI.

4.      On or around August 15, 2019, Daniel Berger ("Berger") approached BHHI's representatives and stated that he was the representative of various interrelated companies which provided payment processing services.

5.      On August 15, 2019, BHHI's representative, Sloane Stone, arranged a Skype Teleconference with Berger (the "Skype Teleconference"), in which they agreed that

Berger would procure a processing entity (the "Processing Entity") to provide BHHI with payment processing services in consideration for certain agreed fees and charges.

6. The parties agreed that "settlement" was to take place on a weekly basis. That is, at weekly intervals, the Processing Entity was to conduct a reconciliation by posting all data concerning the processed transactions on a virtual back office or backend, being an online "Merchant Control Panel" from which BHHI would be able to access details of all relevant transactions. The Processing Entity would then issue a processing statement summarizing the sums which had been received by the Processing Entity on BHHI's behalf, and the sums which were due to be paid over to BHHI. It would collect all payments made by Third Party Customers and processed through its MIDs in the past seven days, and transfer such payments over to BHHI, subject to the deduction of applicable processing fees and charges, as well as what is known in the industry as a "rolling reserve."

7. The rolling reserve amounted to 10% of the total volume of transactions processed, which sum MCDP would be entitled to retain for a period of 180 days. A rolling reserve generally serves as a form of security or buffer for processing agents to ensure that they have sufficient liquidity to return any payments to customers in the event that a large number of customers claim "chargebacks" (where a customer disputes the transaction and seeks a return of his or her money on the basis that the goods and services were not provided, or were not provided as expected).

8.      While the parties had agreed on the above terms, Berger did not specify the identity of the Processing Entity at this juncture and BHHI understood that it was to be confirmed at a later stage.

9.      On August 29, 2019, while the parties were still setting up the necessary arrangements and electronic infrastructure needed to begin payment processing, Berger introduced BHHI's representatives to a Daphne Alfaro ("Alfaro") via a Skype Group Chat, stating that Alfaro would be assisting him.

10.     The parties began processing payments on August 31, 2019 through a first MID, the "Peak Pay MID", and later also began to channel payments through a second MID called the "House MID" on September 10, 2019. Around this time, BHHI's representatives were given access to the Merchant Control Panel which, they noted, bore the name "PHOENIX" as well as the same sailboat emblem that is reflected on MCDP's website. This indicated to BHHI that MCDP was the Processing Entity which Berger represented and had procured to provide BHHI with payment processing services.

11.     Indeed, on September 12, 2019, BHHI received its first payment in respect of a settlement under the PeakPay MID from WorldFirst Singapore, for the account of MCDP. Subsequently, between September 12, 2019 and January 6, 2020, BHHI also received 37 payments from World First Singapore for the account of MCDP.

12.     From around September 2019, MCDP fell into a pattern of making delayed and deficient payments. That is, the sums which MCDP transferred to BHHI were

invariably paid late and in smaller amounts than what was properly owed to BHHI. Nevertheless, as the discrepancy between what was paid over and what was owed was initially not large, BHHI continued to process payments through MCDP, believing Berger's assurances that the payment shortfall may not have reached BHHI's bank account, or that reconciliation reports may not have been updated accurately.

13. In around January 2020, Alfaro informed Sloane over a telephone call that one reason the outstanding balance owed by MCDP to BHHI was growing was that a large sum of money had been withheld by the acquirer, Famsa Bank, a bank in Mexico. However, when Sloane pressed Alfaro for further details, including most crucially what Famsa Bank's stated reason for withholding the funds was and evidence of the same, Alfaro stated that she did not have further information, and directed Sloane to take up any queries with Berger.

14. Over the next few months, Sloane continued to press Berger and Alfaro for further details as to the status and whereabouts of the missing payments. However, Berger and Alfaro would each evade Sloane's queries by insisting that they did not have further information and that Sloane should seek the necessary information from the other person. Specifically, Berger began to take the position that he was only answerable for payments due in respect of a third MID through which the parties began to process payments on December 13, 2019 (the "IPTV MID"), and that Sloane should address all her concerns in respect of sums due under the PeakPay and House MIDs to Alfaro. This

6

was clearly, however, a fiction constructed after the fact since Berger had been instrumental in establishing the relationship between BHHI and MCDP from the outset.

15.     To date, BHHI is owed an outstanding sum of US$2,680,535.21 in payments received on its behalf by MCDP (the "Trust Monies") under the Peak Pay, House, and IPTV MIDs. Berger and Alfaro's utter refusal to explain the whereabouts of these Trust Monies, or to substantiate their claim that the funds had been withheld by Famsa Bank, give BHHI strong reason to believe that this claim was simply a fabricated excuse and that MCDP had, from the outset, intended to defraud BHHI of the Trust Monies.

### a.  The Singapore Proceeding

16.     On April 24, 2020, BHHI filed Suit No. 371 of 2020 in the High Court of the Republic of Singapore ("Singapore Court") against MCDP and Mr. Carbonara, bringing claims against MCDP for breach of contract and breach of trust, and against both MCDP and Mr. Carbonara, its sole shareholder, director, Managing Director and CEO, for fraud and unlawful means conspiracy. Suit No. 371 of 2020 ("the Suit") essentially alleges that MCDP and Mr. Carbonara misappropriated, or caused to be misappropriated, substantial funds belonging to BHHI.

17.     In connection with that proceeding, BHHI also requested an injunction order. After a strong showing of a good arguable case of fraud,[1] said order was issued on May 4, 2020 by the Singapore Court, High Court Order No. 2608 of 2020 ("the Singapore

_____

[1] This is the test applicable to the grant of a freezing injunction under Singapore law.

7

Court Order"). The injunction order was subsequently confirmed on an *inter partes* basis on August 11, 2020, when the Singapore Court dismissed the Defendants' application to have the injunction order set aside and affirmed that BHHI had a good arguable case in its claims against MCDP Phoenix. The Singapore Court Order is an injunction order against MCDP Phoenix and Mr. Carbonara, which prohibits them from: (1) removing any assets from Singapore whether in their own name or not and whether solely or jointly owned up to the value of US$ 2,680,535.21; or (2) in any way disposing of or deal with or diminish the value of any of their assets whether they are in or outside Singapore whether in their own name or not and whether solely or jointly owned up to the same value.

18.     Though required to make complete disclosures regarding their finances, MCDP and Mr. Carbonara failed to disclose the assets held at FFIB.

19.     BHHI then sought the aid of this court through a 28 USC §1782 petition for discovery and received an order (directed at FFIB) subpoenaing records related to assets held at FFIB.

20.     Upon an examination of said records, BHHI found that the funds held at FFIB are linked, in part, to the ones MCDP was entrusted to forward to BHHI. Specifically, the funds held at FFIB in the name of MCDP included a sum of 12,349,789 MXN pesos, deposited on April 16, 2020, from an entity known as "Devolucion de Reservas Feenicia," which in turn appears to be linked to a Mexican financial institution known as Servicios Estrategicos en Tecnologias de Informacion S. de R.L. de C.V.

8

("Feenicia"). BHHI has established, based on its investigation into the location of the funds, that at least part of the funds processed on its behalf by MCDP had been processed through merchant accounts operated by Feenicia. This is a strong indicator that the FFIB was used to process monies belonging to BHHI. Further, MCDP's own correspondence, dated January 27, 2020 confirms that the funds processed on behalf of BHHI were being processed in Mexican Pesos. BHHI has also learned that in an email correspondence dated April 9, 2020 with FFIB's officers in relation to the setting up of MCDP's account, Mr. Carbonara had mentioned that MCDP had been "*doing 20m per month with famsa last year*" and were "*looking for more solutions now*".

21.     According to MCDP, it intended to use the funds at FFIB, supposedly held in escrow for third parties, as collateral for a loan to MCDP secured against such funds. *See*, Dkt. 6, p. 2-3.

22.     After this failed, the FFIB documents show that MCDP intended to send money kept in the FFIB accounts, and which supposedly belong to third parties, to a Morgan Stanley account in the name its CEO, Mr. Carbonara. This further indicates the FFIB accounts were to be used be for inequitable conduct and to further misappropriate funds that did not belong to MCDP. *See also*, Dkt. 20 at ¶20.

23.     Based on an ongoing investigation and documents concerning the FFIB accounts, funds belonging to BHHI were siphoned of to diverse financial institutions, including FFIB.

24. BHHI has actively litigated the Singapore Proceeding against MCDP and Mr. Carbonara for the last eight months (since April 2020).

25. Among the issues to be litigated is the location of the funds BHHI entrusted to MCDP, which among them are those held by FFIB.

## IV. INTERVENOR'S FIRST CAUSE OF ACTION – RETURN OF FUNDS OR PROPERTY

26. Allegations included in Section II through IV, are hereby incorporated, by reference, to this cause of action.

27. MCDP misappropriated an amount estimated at US$2,680,535.21, belonging to BHHI. It obtained control over said funds illegally, through breach of contract and its fiduciary duty, and through fraud, as has been stated in the Singapore Proceeding.

28. Documents produced by FFIB show that funds held at FFIB are linked, in part, to those funds owed to BHHI. Thus, BHHI has a right to recover said funds in an amount to be established at trial.

## V. INTERVENOR'S SECOND CAUSE OF ACTION – DECLARATORY JUDGMENT

29. All pertinent allegations are hereby incorporated, by reference, to this cause of action.

30.     Pursuant to Fed. R. Civ. 57 and the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, BHHI requests a declaratory judgment concerning the ownership rights over the funds held by FFIB, which are now deposited with the court.

31.     An ongoing investigation and documents provided by FFIB concerning the funds at issue, show that, in part, these are funds that were siphoned off from BHHI. As such BHHI, is entitled to the funds at issue in an amount to be determined at trial.

## VI.    PRAYER FOR RELIEF

1) Issue an Order enjoining a transfer or disbursal of the subject funds prior to a judicial determination of ownership by this Court or the Singapore Court;

2) That this Court issue a declaratory judgment determining the ownership rights as to the funds at issue or a stay in this case pending such determination by the Singapore Court;

3) Once ownership as to BHHI is established, a return of such funds that rightfully belong to BHHI;

4) Any such further relief as may be warranted under law and equity.

RESPECTFULLY SUBMITTED.

11

In San Juan, Puerto Rico, this 8th day of January of 2020.

**MELENDEZ TORRES LAW, PSC**
*Attorneys for B High House International PTE*
*LTD*
MCS Plaza, Suite 1200
255 Ponce de León Avenue
San Juan, PR 00917
Telephone: (787) 281-8100
Fax: (787) 281-8310
*s/Sonia I. Torres Pabón*
USDC-PR No. 209310
storres@melendeztorreslaw.com

*s/Isabel C. Lecompte Shiba*
USDC-PR No. 230714
ilecompte@melendeztorreslaw.com

## CERTIFICATION

IT IS HEREBY CERTIFIED that on this same date we have electronically filed the

foregoing motion with the Clerk of the Court using the CM/ECF system which will send

notifications of such filing to the Government and all other attorneys of record at their

address in the CM/ECF system.

*s/Isabel C. Lecompte Shiba*

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| Deltec Bank & Trust Limited, | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )     Civil Action No. |
| Michael Carbonara, Ibanera LLC, | ) |
| and Ibanera Private Limited, | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Ibanera LLC
2120 Carey Avenue
Cheyenne, WY 82001

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Joseph Isenberg, Esq.
Venable, LLP
801 Brickell Avenue, Suite 1500
Miami, FL 33131

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____       _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                    *Server's signature*

                                              _____
                                                    *Printed name and title*


                                              _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| Deltec Bank & Trust Limited, | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )  Civil Action No. |
| | ) |
| Michael Carbonara, Ibanera LLC, | ) |
| and Ibanera Private Limited, | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Ibanera Private Limited
62 Ubi Road #03-16
Singapore 408734

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Joseph Isenberg, Esq.
Venable, LLP
801 Brickell Avenue, Suite 1500
Miami, FL 33131

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____         _____
                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____, a person of suitable age and discretion who resides there,

on *(date)* _____, and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____, who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.


Date: _____            _____
                                                                      *Server's signature*

                                                    _____
                                                                      *Printed name and title*


                                                    _____
                                                                      *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| Deltec Bank & Trust Limited, | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )     Civil Action No. |
| Michael Carbonara, Ibanera LLC, | ) |
| and Ibanera Private Limited, | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Michael Carbonara
                                 102 NE 2nd Street #112
                                 Boca Raton, Florida 33432

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Joseph Isenberg, Esq.
                                   Venable, LLP
                                   801 Brickell Avenue, Suite 1500
                                   Miami, FL 33131

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                  _____

                                                   *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

JS 44   (Rev. 04/21/ FLSD Revised 12/02/2022)

# JS 44 CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*  **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a)  PLAINTIFFS
Deltec Bank & Trust Limited

## DEFENDANTS
Michael Carbonara; Ibanera LLC; Ibanera Privat

**(b)**  County of Residence of First Listed Plaintiff  Bahamas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Palm Beach County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Joseph B. Isenberg, Venable LLP, 801 Brickell Avenue, Suite 1500, Mi

Attorneys *(If Known)*

**(d)**Check County Where Action Arose:  ☒ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

## II. BASIS OF JURISDICTION  *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 2  U.S. Government
     Defendant

☒ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment
    & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted
    Student Loans
    (Excl. Veterans)
☐ 153 Recovery of Overpayment
    of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product
    Liability
☐ 320 Assault, Libel &
    Slander
☐ 330 Federal Employers'
    Liability
☐ 340 Marine
☐ 345 Marine Product
    Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle
    Product Liability
☐ 360 Other Personal
    Injury
☐ 362 Personal Injury -
    Med. Malpractice

**PERSONAL INJURY**
☐ 365 Personal Injury -
    Product Liability
☐ 367 Health Care/
    Pharmaceutical
    Personal Injury
    Product Liability
☐ 368 Asbestos Personal
    Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal
    Property Damage
☐ 385 Property Damage
    Product Liability

### FORFEITURE/PENALTY
☐ 625 Drug Related Seizure
    of Property 21 USC 881
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Acts
☐ 720 Labor/Mgmt. Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical
    Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement
    Income Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal
    28 USC 157

### INTELLECTUAL PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated
    New Drug Application
☐ 840 Trademark
☐ 880 Defend Trade Secrets
    Act of 2016

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or
    Defendant)
☐ 871 IRS—Third Party 26 USC
    7609

### OTHER STATUTES
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced
    and Corrupt Organizations
☐ 480 Consumer Credit
    (15 USC 1681 or 1692)
☐ 485 Telephone Consumer
    Protection Act (TCPA)
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/
    Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure
    Act/Review or Appeal of
    Agency Decision
☐ 950 Constitutionality of
    State Statutes

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### CIVIL RIGHTS
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/
    Accommodations
☐ 445 Amer. w/Disabilities -
    Employment
☐ 446 Amer. w/Disabilities -
    Other
☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate
    Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee –
    Conditions of
    Confinement

### IMMIGRATION
☐ 462 Naturalization Application
☐ 465 Other Immigration
    Actions

## V. ORIGIN  *(Place an "X" in One Box Only)*
☒ 1  Original
     Proceeding
☐ 2  Removed
     from State
     Court
☐ 3  Re-filed
     (See VI
     below)
☐ 4  Reinstated
     or
     Reopened
☐ 5  Transferred from
     another district
     *(specify)*
☐ 6  Multidistrict
     Litigation
     Transfer
☐ 7  Appeal to
     District Judge
     from Magistrate
     Judgment
☐ 8  Multidistrict
     Litigation
     – Direct
     File
☐ 9  Remanded from
     Appellate Court

## VI. RELATED/ RE-FILED CASE(S)
*(See instructions):* a) Re-filed Case ☐ YES ☒ NO  b) Related Cases ☐ YES ☐ NO
JUDGE:                                              DOCKET NUMBER:

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
Breach of Contract, Breach of Fiduciary Duty, Aiding & Abetting of Fiduciary Duty, Conversion, Aiding & Abetting
LENGTH OF TRIAL via 5        days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23
**DEMAND $** 33,000,000.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**
DATE                          SIGNATURE OF ATTORNEY OF RECORD
March 3, 2025                 s/ Joseph B. Isenberg

**FOR OFFICE USE ONLY : RECEIPT #**        **AMOUNT**        IFP        JUDGE        MAG JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.**      (a) **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

     (b) **County of Residence**.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

     (c) **Attorneys**.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**      **Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked. Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.**      **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**      **Nature of Suit**.  Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**      **Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

**VI.**      **Related/Refiled Cases**. This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

**VII.**      **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**. Example: U.S. Civil Statute: 47 USC 553
                 Brief Description: Unauthorized reception of cable service

**VIII.**      **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.