# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:25-CV-20978-MD

DELTEC BANK & TRUST LIMITED,

     Plaintiff,

v.

MICHAEL CARBONARA; IBANERA LLC,
and IBANERA PRIVATE LIMITED,

     Defendants.

_____/


**PLAINTIFF'S EXPEDITED MOTION FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION FREEZING SPECIFIC ASSETS AND FOR AN
IMMEDIATE ACCOUNTING AND LIMITED EXPEDITED DISCOVERY
<u>AND SUPPORTING MEMORANDUM OF LAW</u>**

# TABLE OF CONTENTS

BASIS FOR EXPEDITED RELIEF ................................................................................................ 1

MOTION ................................................................................................................................... 1

INTRODUCTION ...................................................................................................................... 1

FACTUAL SUMMARY ............................................................................................................. 2

    A.   Ibanera promises to hold the Trust Funds "in trust" and strictly follow Deltec's payment instructions. ....................................................................................................................... 2

    B.   Ibanera says it has problems with its banks which render it unable to transmit funds for its clients. ............................................................................................................................... 3

    C.   Deltec instructs Ibanera to return the Trust Funds and Ibanera fails to do so. ..................... 5

ARGUMENT ............................................................................................................................ 10

    A.   A Temporary Restraining Order and Preliminary Injunction are warranted and necessary to secure the Trust Funds and prevent Defendants from transferring (or further transferring) the Trust Funds to themselves or anyone other than Deltec. ............................................... 10

        1.   Deltec has demonstrated that there is a substantial likelihood of success on the merits of its claims. ............................................................................................... 11

        2.   There is a likelihood of irreparable harm to Deltec. ...................................... 16

        3.   There is no adequate remedy at law. .............................................................. 17

        4.   The threatened injury to Deltec outweighs any harm to Defendants. ............ 18

        5.   A temporary injunction will not disserve the public interest. ......................... 18

    B.   An asset freeze is necessary. ............................................................................................ 18

    C.   An expedited accounting is appropriate and necessary. ..................................................... 19

    D.   A repatriation order should be entered. ............................................................................. 21

    E.   Expedited discovery is necessary to determine the disposition of the Trust Funds. ............ 22

CONCLUSION ......................................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*8th Sense, Inc. v. Humes McCoy Aviation, Inc.*,
   No. 21-cv-22792-KMM, 2021 WL 8202671 (S.D. Fla. Dec. 15, 2021) ........................................ 17, 18

*Absolute Activist Value Master Fund Ltd. v. Devine*,
   No: 2:15–cv–328–FtM–29DNF, 2015 WL 12838168 (M.D. Fla. July 1, 2015) ........................... 18, 19

*Bank of W. Orange v. Assocs. Disc. Corp.*,
   197 So. 2d 858 (Fla. Dist. Ct. App. 1967) ............................................................................................ 13

*Brigham v. Brigham*,
   11 So. 3d 374 (Fla. Dist. Ct. App. 2009) ............................................................................................. 14

*Butler v. Alabama Jud. Inquiry Comm'n*,
   111 F. Supp. 2d 1224 (M.D. Ala. 2000) ............................................................................................. 11

*Carl v. Republic Sec. Bank*,
   282 F. Supp. 2d 1358 (S.D. Fla. 2003) ................................................................................................ 13

*CFTC v. Chilcott*,
   No. 02-CV-00094, Dkt. No. 8 (M.D. Fla. Mar. 7, 2002) ..................................................................... 19

*Chanel, Inc. v. 7perfecthandbags.com*,
   No. 12–22057–CIV, 2013 WL 1857137 (S.D. Fla. May 2, 2013) ........................................................ 19

*Donnelly v. Circuit City Stores, Inc.*,
   No. 5:06-cv-387-Oc-10GRJ, 2007 WL 896337 (M.D. Fla. Mar. 22, 2007) ........................................ 15

*ECapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*,
   519 F. Supp. 3d 1129 (S.D. Fla. 2021) .......................................................................................... 17, 18

*FTC v. AMG Servs., Inc.*,
   No.: 2:12-cv-00536-GMN-VC, 2016 WL 1275612 (D. Nev. Mar. 31, 2016) .................................... 20

*Ga. Banking Co. v. GMC Lending & Mortg. Servs. Corp.*,
   923 So. 2d 1224 (Fla. Dist. Ct. App. 2006) ........................................................................................ 17

*Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*,
   No. 15-CV-60653, 2015 WL 12862724 (S.D. Fla. Aug. 20, 2015) ............................................... 14, 15

*Havens v. Coast Fla., P.A.*,
   117 So. 3d 1179 (Fla. Dist. Ct. App. 2013) ........................................................................................ 12

*Herman v. S.C. Nat'l Bank*,
   140 F.3d 1413 (11th Cir. 1998) ........................................................................................................... 14

*Indus. Park Dev. Corp. v. Am. Express Bank, FSB*,
   960 F. Supp. 2d 1363 (S.D. Fla. 2013) ............................................................................................... 14

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
   51 F.3d 982 (11th Cir. 1995) ................................................................................................. 19

*Mullane v. Almon*,
   339 F.R.D. 659 (N.D. Fla. 2021) .......................................................................................... 22

*Samana Inc. v. Lucena*,
   156 F. Supp. 3d 1373 (S.D. Fla. 2016) ................................................................................ 20

*Schiavo ex rel. Schindler v. Schiavo*,
   403 F.3d 1223 (11th Cir. 2005) ............................................................................................ 11

*SEC v. Illarramendi*,
   No. 3:11CV78 (JBA), 2011 WL 2457734 (D. Conn. June 16, 2011) .......................... 19, 21

*SEC v. Johnson*,
   Case No. 01-7874-Civ-Hurley/Lynch, 2001 WL 37114666 (S.D. Fla. Dec. 31, 2001) ...................... 20

*SEC v. Lottonet, Operating Corp.*,
   No. 17-21033-CIV-LENARD/GOODMAN, 2017 WL 6949289 (S.D. Fla. Mar. 31,
   2017) ..................................................................................................................................... 21

*Silverboys, LLC v. Joelsson*,
   No. 19-23171-CIV-WILLIAMS, 2020 WL 13401917 (S.D. Fla. Nov. 30, 2020) .............. 20

*Solantic, LLC v. City of Neptune Beach*,
   410 F.3d 1250 (11th Cir. 2005) ............................................................................................ 11

*State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*,
   739 F.3d 579 (11th Cir. 2013) .............................................................................................. 16

*United States Fire Ins. Co. v. FineMark Nat'l Bank & Tr.*,
   No. 2:22-CV-130-SPC-KCD, 2023 WL 145013 (M.D. Fla. Jan. 10, 2023) ....................... 16

*United States SEC v. MCC Int'l Corp.*,
   No. 2:22-CV-14129-KMM, 2023 WL 2891235 (S.D. Fla. Mar. 8, 2023), *aff'd sub nom.*
   *SEC v. MCC Int'l Corp.*, No. 22-12281, 2024 WL 1508281 (11th Cir. Apr. 8, 2024) ...................... 10

*Vibo Corp., Inc. v. Us Flue-Cured Tobacco Growers, Inc.*,
   762 F. App'x 703 (11th Cir. 2019) ....................................................................................... 15

*Williams v. Stanford*,
   977 So. 2d 722 (Fla. Dist. Ct. App. 2008) ........................................................................... 14

*Windsor v. United States*,
   379 F. App'x 912 (11th Cir. 2010) ....................................................................................... 11

*Wreal, LLC v. Amazon.com, Inc.*,
   840 F.3d 1244 (11th Cir. 2016) ............................................................................................ 11

*Zaki Kulaibee Establishment v. McFliker*,
   771 F.3d 1301 (11th Cir. 2014) ...................................................................................... 20, 21

## BASIS FOR EXPEDITED RELIEF

Pursuant to Local Rule 7.1(d), Plaintiff seeks relief on an expedited basis for this motion because, as set forth herein, in the absence of a Temporary Restraining Order Plaintiff is very likely to sustain immediate irreparable harm. Plaintiff requests that a Temporary Restraining Order be entered by no later than May 20, 2025, because such relief is necessary to secure the Trust Funds and prevent Defendants from transferring (or further transferring) the Trust Funds to themselves or anyone other than Plaintiff pending the resolution of this matter.

## MOTION

Plaintiff Deltec Bank and Trust Limited ("Deltec"), by and through its undersigned attorneys and pursuant to Rule 65 of the Federal Rules of Civil Procedure, hereby moves the Court for a Temporary Restraining Order and Preliminary Injunction Freezing Assets, for an Immediate Accounting, and for Limited Expedited Discovery as against Defendants Ibanera LLC and Ibanera Private Limited ("Ibanera Singapore" and together with Ibanera LLC, "Ibanera") and Michael Carbonara.  For its Memorandum in support of its Motion, Deltec states as follows:

## INTRODUCTION

Ibanera is a payment services company that provides cross-border money transfers and multi-currency accounts for banks and others. Deltec is a Bahamian bank that retained Ibanera to transfer funds for Deltec and its clients. Deltec and its clients entrusted Ibanera to hold "in trust" approximately $20,674,066 worth of fiat in various currencies. Ibanera promised to do nothing with those funds other than transmit the funds in strict accordance with Deltec's payment instructions. However, Deltec has repeatedly instructed Ibanera to transmit those funds to a Deltec account in another bank and Ibanera has refused to do so. Instead, it has informed Deltec

1

that, despite holding the funds solely in trust for Deltec, Ibanera now intends to keep the money.

Deltec asks the Court to freeze those specifically-identifiable funds, order Defendants to provide an immediate accounting of what Ibanera has done with the funds, repatriate the funds to a United States bank account (if they are overseas), and order limited expedited discovery into the disposition of the funds.

## FACTUAL SUMMARY

Deltec and its clients have deposited the following currencies in the following amounts with Ibanera in special accounts for the purpose of cross-border money transmission, and Ibanera promised to hold the funds "in trust" (the "Trust Funds"):

- $10,996,765 (United States Dollars)
- A$ 276,482 (Australian Dollars)
- C$ 404,702 (Canadian Dollars)
- CHF 1,439,074 (Swiss Francs)
- € 2,474,124 (Euros)
- £ 1,075,466 (Pounds Sterling)
- HK$ 43,979 (Hong Kong Dollars)
- ¥ 497,365,850 (Japanese Yen)
- S$ 262,718 (Singapore Dollars)

(Verified Amended Complaint ("AC") ¶¶ 2, 3, 20-27, 82.)

### A. Ibanera promises to hold the Trust Funds "in trust" and strictly follow Deltec's payment instructions.

Ibanera holds itself out as a payment services provider able to perform cross-border money transfers for its clients via the SWIFT network. (AC ¶¶ 20-22.) Deltec, a Bahamian bank, needed this service in order to move funds from one country to another, so it entered into a Process Services Agreement ("PSA") with Ibanera LLC and Ibanera Singapore in July 2024. (AC ¶¶ 23-24.) Under the PSA, Ibanera promised to provide multicurrency accounts, cross-border money transfers via SWIFT, and real-time currency conversion services. (*Id*.¶ 24.)

Under the PSA, Ibanera was required to maintain "Segregated Client Accounts" with

2

financial institutions and hold funds received from Deltec and its clients "in trust at all times by Ibanera for and on behalf of [Deltec], for the sole benefit of [Deltec]." (*Id.*¶ 25) These funds "remain the property of [Deltec] and will not constitute part of Ibanera's assets." (*Id.*)

The Deltec funds held by Ibanera in Segregated Client Accounts "may be used exclusively and specifically for and on behalf of [Deltec]" and "Ibanera may not make any use, encumbrance, lien, promise and/or any other disposition with respect to the Funds, other than in strict accordance with [Deltec's] Payment Instructions." (*Id.*) The PSA states, "[u]pon receipt of a Payment Instruction, Ibanera shall be responsible to execute the respective Payment as soon as possible and in any event by no later than three (3) Business Days in strict accordance and compliance with the Payment Instructions provided by [Deltec]." (*Id.* ¶ 27.)

Separately, the PSA contemplated an "Operating Account" with Ibanera, to be funded by Deltec with a minimum balance of $100,000. (*Id.* ¶ 28.) Ibanera could deduct fees from this account and, in the event of a breach by Deltec, Ibanera could withhold funds in this account to cover its losses. (*Id.*)

Ibanera Singapore established one or more account(s) with the Development Bank of Singapore ("DBS") to hold Deltec's funds under the PSA for international transfers. (*Id.* ¶ 31.) Ibanera Singapore was licensed by the Monetary Authority of Singapore ("MAS") to hold multi-currency accounts and conduct cross-border transfers for its clients. (*Id.* ¶¶ 31-32.) Ibanera LLC established one or more accounts with Cross River Bank in the United States for domestic transfers. (*Id.* ¶ 39.)

### B.  Ibanera says it has problems with its banks which render it unable to transmit funds for its clients.

On or about October 22, 2024, Deltec learned that Ibanera's ability to execute SWIFT

payments via the Ibanera Singapore account at DBS had been suspended. (AC ¶ 37.) On information and belief, DBS closed Ibanera Singapore's account due to Ibanera's improper or unauthorized use of the account, after which Ibanera Singapore voluntarily surrendered its license to perform cross-border money transfers. (*Id.* ¶ 40.) Deltec conveyed that it would have to move funds out of Ibanera if Ibanera could not execute cross-border transfers, in order for Deltec to avoid any liquidity issues. (*Id.* ¶¶ 38, 41.) At the time, Ibanera was holding the equivalent of USD$ 31.7 million for Deltec in multiple currencies.[1] (*Id.* ¶ 41.)

On or about November 7, 2024, Deltec was promised that "Ibanera is actively reallocating liquidity, and funds are expected to be accessible through their alternative sponsor bank, Green Link [Digital Bank of Singapore], within the coming week." (*Id.* ¶ 42.) By mid-November, Deltec was told that it had an account "at Ibanera with Green Link Bank" and that it was "fully set up for the new SWIFT rails at Ibanera Singapore and is ready for operations at [Deltec's] dashboard." (*Id.* ¶ 45.)

However, by early December 2024, Ibanera faced more problems with its banks. Deltec was informed that "[d]ue to account relocation at GreenLink between Ibanera entities, deposits and withdrawals are not processable at the moment" and "[f]or both incoming and outgoing transactions, SWIFT rails and multi-currency accounts powered by Green Link Bank (Singapore) remain on hold at Ibanera Private Pte Ltd (Singapore)." (AC ¶ 47.) Ibanera represented that Deltec could access the balance in its multi-currency account by sending "a manual request to Ibanera Treasury." (*Id.* ¶ 48.)

---

[1] In December, Deltec was able to transfer USD $12 million worth of currencies out of its Ibanera accounts; approximately $20 million worth of currencies remained with Ibanera. (AC ¶¶ 46, 82.)

**C.  Deltec instructs Ibanera to return the Trust Funds and Ibanera fails to do so.**

On January 6, 2025, Deltec instructed Ibanera to transfer millions of dollars worth of mixed fiat from Deltec's accounts at Ibanera to Deltec's account with another financial institution, writing that Deltec expected to transfer funds back to its Ibanera account if Ibanera was ever able to get its SWIFT platform operational again. (AC ¶ 49.) Deltec followed up on this request in writing on January 8, 2025, January 13, 2025, January 15, 2025, and January 31, 2025. (*Id.* ¶¶ 53, 54, 56, 59.) With each request, the urgency increased. (*Id.*) Still, Ibanera provided no response and did not transfer the funds. (*Id.* ¶¶ 52, 53, 55, 57, 58, 59, 60, 61.)

On February 3, 2025, Deltec's in-house counsel sent a letter demanding that Ibanera return Deltec's funds, copying the principals of Ibanera LLC and Ibanera Singapore. (Declaration of A. Moore, Ex. A.) On February 11, an attorney for "Ibanera" in Texas responded and, for the first time, suggested that Deltec had not complied with the PSA (without specifying how) and that Ibanera was "currently evaluating" its purported "losses." (Moore Decl., Ex. B.) The Chairman of Deltec then contacted the principals of Ibanera Singapore and Ibanera LLC by phone. They did not identify any purported wrongdoing by Deltec. (AC ¶¶ 67-68.)

By February 26, 2025, after a response from Deltec's attorneys advising Ibanera that its baseless claims were clearly a pretext to unlawfully hold Deltec's funds, counsel for Ibanera offered a different so-called justification for withholding the Trust Funds: a purported audit by DBS and MAS requiring Ibanera to "preserve" the funds. (Moore Decl., Ex. C, Ex. D.) Deltec has never seen any order or direction from MAS or any other regulator requiring the funds to be preserved. (AC ¶¶ 73, 77.) Deltec believes that no such order exists.

In the same letter, the first law firm representing Ibanera promised that the Trust Funds "are in safeguarded accounts and no one is misusing or misapplying such funds" and that "the

5

funds are segregated and protected." (Moore Decl., Ex. D.)

Deltec filed this action on March 3, 2025. (*Id.* ¶ 75; DE 1.) After promising to look into accepting service, the first firm representing Ibanera stopped responding to Deltec's correspondence. (Moore Decl., Ex. E.)

On March 17, 2025, Deltec's counsel heard from a second law firm, this one representing Ibanera LLC and Carbonara. Ibanera's new attorney wrote "I am assured by Ibanera that the subject funds have not been misappropriated, but are intact, protected and subject of ongoing audits." (Moore Decl., Ex. F.) Deltec asked for documentation demonstrating as much and counsel replied on March 19th: "I will request evidence that the funds are intact, so you can be assured of that."[2] (*Id.*) No such evidence has ever been provided. (Moore Decl., ¶ 8.)

Approximately a week later, counsel for Ibanera explained that MAS had "pulled" Ibanera Singapore's license, resulting in the closing of "the bank [Ibanera Singapore] operated in Singapore" and causing the purported "audits." (Moore Decl., Ex. G.) On information and belief, this is incorrect and, in fact, Ibanera Singapore voluntarily surrendered its license when its DBS account was closed due to Ibanera's improper use of the account. (AC ¶ 4, 79, 90.) Counsel also stated that the audits would be completed by mid-April. (Moore Decl., Ex. G.) Ibanera has never conveyed anything to Deltec about the results of these purported "audits." (Moore Decl., ¶ 9.)

On April 2, 2025, counsel for Deltec sent an email to counsel for Ibanera LLC and Carbonara, which stated:

> We are writing to request that Ibanera agree to the immediate entry
> of an order (1) freezing all of Deltec's funds in Ibanera's possession
> ($20,674,066 worth of various currencies, as set forth below) until

---

[2] In response to a request for information about what audit could possibly justify withholding all of the Trust Funds, counsel for Ibanera responded that he was "unwilling to name the auditors at present." (Moore Decl., Ex. F.)

further order of the Court and (2) committing Ibanera to provide a sworn accounting that these Deltec funds remain in Deltec's accounts in Ibanera's custody. Absent agreement to such an order by Friday, April 4, 2025 at 5:00 PM EST, we will assume that Ibanera will oppose the entry of such an order.

As you noted when we first spoke, if you conclude that your new client Ibanera is involved in some sort of scam, you would not assist them. The facts to date all point in that direction:

•   Ibanera has refused to return over $20 million worth of Deltec's funds that are purportedly held in trust by Ibanera.

•   Ibanera contends it is withholding funds because of an audit by the Monetary Authority of Singapore. Ibanera has refused to provide any evidence that such an audit exists, despite our requests.

•   Ibanera alternatively contends it is withholding funds because of a breach of contract by Deltec. Despite our repeated requests, Ibanera has provided no information about any purported breach or even a general description of what the breach might be.

•   You have informed us that MAS has revoked Ibanera's registration and Ibanera is not on the MAS list of registered financial institutions.

•   You committed to providing us with evidence that Ibanera is in fact safely holding Deltec's funds. We have received nothing.

•   We have asked if you represent Ibanera Private Limited, and you have refused to answer.

•   You have informed us that Ibanera LLC and Mr. Carbonara intend to move to quash service on their private mailbox (listed with the Secretary of State) because their alternative addresses are easily found. You then refused to provide their alternative addresses. Our process server attempted to serve Ibanera, LLC at the address listed on its website, but the address is vacant. We have also attempted to serve Mr. Carbonara at his home but have not found a clear residential address for Mr. Carbonara.

•   Ibanera has stopped responding to communications from my

7

client and you have not responded to our urgent emails.

Taken together, these facts lead to the conclusion that Ibanera has absconded with Deltec's funds, or at the very least has wrongfully transferred or intends to wrongfully transfer or dissipate the funds. As Ibanera knows, the majority of these funds belong to Deltec's banking clients and the loss of the funds would cause Deltec significant and irreparable harm.

The agreed order that we now request should do nothing more than preserve the status quo. Ibanera has no legitimate basis for removing funds from Deltec's accounts and would have no legitimate basis for using the funds in any other manner (again, the funds belong to Deltec and are merely held in trust by Ibanera). Even Ibanera's recent claim that it is holding over $20M to cover some unspecified damages for some unspecified breach by Deltec should not prevent Ibanera from agreeing to a freeze of the funds until an order from the Court adjudicating any such purported damages. Thus, a failure to agree to this order will simply confirm our conclusion that Ibanera has wrongfully transferred or intends to wrongfully transfer Deltec's funds.

(Moore Decl., Ex. H.)  Counsel for Ibanera LLC and Carbonara refused to even acknowledge receipt of this email, much less respond to the request therein. (Moore Decl., ¶ 10.)

Instead of agreeing to preserve the *status quo*, under which Deltec's Trust Funds would remain (in the words of Ibanera's attorneys) safeguarded, intact, segregated, protected, and preserved, Ibanera LLC and Carbonara confirmed that precisely the opposite is true.

On April 7, 2025, counsel for Ibanera, LLC and Carbonara represented in writing that Ibanera LLC is entitled "**to keep DBT funds**" to offset its "losses"; that Ibanera is entitled to "**retain deposits** made under [the PSA]"; that Deltec's Trust Funds were actually just "a security deposit" that Ibanera LLC and Carbonara "**are entitled to retain as compensation** for the damages suffered" (or "retain . . . **as partial compensation for damages suffered**"). (Moore Decl., Ex. I.)

Ibanera LLC and Carbonara claimed that they are keeping Deltec's funds to compensate

8

themselves for such damages as the "Complete suspension of Ibanera Singapore's operations," which Ibanera LLC now claims was a "regulatory action" by MAS "triggered by [Deltec's] unauthorized activities, which MAS determined violated Singapore's financial regulations." (*Id.*) No such "unauthorized activities" by Deltec have ever been disclosed and Deltec has never received any notification from MAS that it has done anything wrong whatsoever (Deltec is not regulated by MAS as it has never provided payment services in Singapore). (AC ¶ 90.) In other words, Ibanera's story strains credulity.

Because Ibanera LLC and Carbonara admitted that they are taking Deltec's funds for themselves, counsel for Deltec wrote on April 15, 2025 with an urgent request:

> . . . below is a list of fiat in various currencies that Ibanera claims to hold and is obligated to hold in trust on behalf of Deltec and its clients. Please immediately identify the bank or banks in which these funds are held and the named owner or owners of each such account. Ibanera should be able to provide this basic information without delay. Should Ibanera fail to provide this information by 5:00 p.m. ET on April 17th we will assume that the below ledger is unsupported.

(Moore Decl., Ex. I.) Ibanera LLC and Carbonara failed to even acknowledge the request, much less provide the requested information. (Moore Decl., ¶ 11.)

Instead, a third law firm representing Ibanera LLC and Carbonara (this one in Puerto Rico) sent a letter on April 17, 2025. This time, these Defendants threatened counter-claims against Deltec and untold others for defamation, tortious interference, RICO violations, and other claims all "arising out of a complaint filed" in this action. (Moore Decl., Ex. J.) Notably, that conduct (filing this lawsuit) is the only specific act of purported wrongdoing by Deltec that Defendants have ever identified.

Contemporaneously with this filing, counsel for Plaintiff is providing all Defendants with

notice of the present Motion and Memorandum in Support thereof. Defendants Ibanera LLC and Carbonara will receive notice via the Court's ECF/PACER system, as counsel for these Defendants has appeared. Ibanera Singapore will receive notice via email, WhatsApp message, and expedited international mail. *See United States SEC v. MCC Int'l Corp.*, No. 2:22-CV-14129-KMM, 2023 WL 2891235, at *4 (S.D. Fla. Mar. 8, 2023), *aff'd sub nom. SEC v. MCC Int'l Corp.*, No. 22-12281, 2024 WL 1508281 (11th Cir. Apr. 8, 2024) ("In this Circuit, Rule 65 has been interpreted to require that a party have notice of the motion and hearing; perfecting service on a defendant is not a prerequisite to the entry of a preliminary injunction order.").

## **ARGUMENT**

A temporary restraining order and preliminary injunction are necessary in this case to freeze the Trust Funds and prevent Defendants from removing (or continuing to remove) the Trust Funds out of the segregated protected accounts in which they are required to be maintained. An immediate accounting is required in order for Deltec to know the location and amount of whatever Trust Funds remain in Defendants' possession. The Trust Funds should also be repatriated to the United States into an account under the Court's supervision. Finally, limited expedited discovery is necessary to substantiate the accounting.

**A. A Temporary Restraining Order and Preliminary Injunction are warranted and necessary to secure the Trust Funds and prevent Defendants from transferring (or further transferring) the Trust Funds to themselves or anyone other than Deltec.**

Despite multiple written requests, Defendants have: (a) refused to provide any documentation or information whatsoever regarding the custody or control of the Trust Funds; (b) refused to agree to an order that they hold the Trust Funds pending a resolution of this lawsuit; and (c) confirmed that they are keeping the Trust Funds for themselves, purportedly as

compensation for unilaterally determined "damages." Deltec seeks an order preserving the *status quo* and preventing Defendants from transferring whatever Trust Funds remain under their control to anyone other than Deltec.

The standard for the issuance of a temporary restraining order and a preliminary injunction are identical. *Windsor v. United States*, 379 F. App'x 912, 916–17 (11th Cir. 2010). To obtain injunctive relief, a movant must make the following four showings: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunctive relief issues; (3) the threatened injury to the movants outweighs whatever damage the proposed injunctive relief may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). "The district court has substantial discretion in weighing the four relevant factors to determine whether preliminary injunctive relief is warranted." *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1254, n.4 (11th Cir. 2005).

Here, each of the four requirements is met.

### 1. Deltec has demonstrated that there is a substantial likelihood of success on the merits of its claims.

"A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). This factor is "generally the most important" of the four factors. *Id.* "[T]he court does not have to find that Plaintiffs have a substantial likelihood of success on every claim set forth in their Complaint. It is sufficient if the law or facts support a substantial likelihood of success on at least one claim that would sustain the issuance of a temporary restraining order." *Butler v. Alabama Jud. Inquiry Comm'n*, 111 F. Supp. 2d 1224, 1230 (M.D. Ala. 2000).

**a. Deltec is likely to succeed in showing that Ibanera has breached the PSA by refusing to return the Trust Funds to Deltec and claiming ownership of the Trust Funds.**

To succeed in its breach of contract action, Deltec must show that there is a valid and binding contract, that Ibanera breached the contract, and that Deltec suffered damages. *Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. Dist. Ct. App. 2013). Deltec has met each of these elements.

Ibanera has never disputed that the PSA is a binding contract. As set forth above, the PSA requires Ibanera to keep the Trust Funds sacrosanct and do nothing with them whatsoever except transmit them strictly according to Deltec's payment instructions. (*See* AC ¶¶ 25-30.) It cannot be disputed that Deltec has instructed Ibanera to transmit the Trust Funds to another Deltec account. (*See id.* ¶¶ 49, 53, 54, 56, 59; Moore Decl., Ex. A.) Nor can it be disputed that Ibanera has refused to do so. (AC ¶¶ 52, 53, 55, 57, 58, 59, 60, 61; Moore Decl., Exs. A-I.) Thus the breach is evident. Deltec has been injured by the loss of its property, the Trust Funds, which must be returned. Thus, Deltec is likely to succeed on its breach of contract action.

Ibanera's purported contractual justification for withholding the Trust Funds is both factually and legally deficient. Ibanera has argued that Deltec has breached the PSA and therefore Ibanara is entitled to keep the Trust Funds to cover its losses. However, Ibanera has never identified a single thing that Deltec has done to breach the PSA. (AC ¶ 93.) That alone is dispositive of this purported defense.

And even if Ibanera could identify a breach by Deltec, that would not justify withholding the Trust Funds. Under some circumstances, Ibanera may retain *funds in an Operating Account* to cover its losses in the event of a breach by Deltec. (AC ¶ 29 ("As against the Operating Account, Ibanera is authorized . . . to set off the whole or any part of [Deltec's] liabilities . . .

against any sums held by Ibanera and owed to the Company" and "Ibanera may set off the amount it estimates in good faith will be the liquidated amount.").) However, the PSA is clear that funds in a Segregated Client Account—like the Trust Funds—are sacrosanct and may not be seized by Ibanera under any circumstances. Such funds must be "held in trust at all times by Ibanera for and on behalf of [Deltec], for the sole benefit of [Deltec]" and "may be used exclusively and specifically for and on behalf of [Deltec]." (AC ¶ 26.) "Ibanera may not make any use, encumbrance, lien, promise and/or any other disposition with respect to the Funds, other than in strict accordance with [Deltec's] Payment Instructions." (*Id.*) The Trust Funds in these accounts "remain the property of [Deltec] and will not constitute part of Ibanera's assets." (*Id.*)

Finally, even if Deltec *had* somehow breached the PSA and even if Ibanera *was* entitled under the PSA to recover its damages from the Trust Funds, the Court should still grant the relief requested in this Motion. Deltec simply asks that the Trust Funds be frozen, accounted for, and repatriated so that they can be awarded to the proper party once this case is decided on the merits. Ibanera's refusal to agree to this relief evidences that it hopes to dissipate the Trust Funds before any such ruling on the merits.

> **b. Deltec is likely to succeed in demonstrating that Ibanera breached its fiduciary duties as a trustee of Deltec's funds by refusing to transfer and keeping the Trust Funds.**

Ibanera agreed to hold the Trust Funds "in trust" for Deltec and its clients for the purpose of cross-border transfers and that the funds would "remain the property of [Deltec]." (AC ¶¶ 24-26.) In other words, the parties agreed that the Trust Funds are "special deposits" which Ibanera must segregate and transfer at Deltec's direction. *Carl v. Republic Sec. Bank*, 282 F. Supp. 2d 1358, 1367 (S.D. Fla. 2003). Therefore, Ibanera became a trustee or agent for Deltec and owed Deltec fiduciary duties with respect to the Trust Funds. *Bank of W. Orange v. Assocs. Disc.*

*Corp.*, 197 So. 2d 858, 862 (Fla. Dist. Ct. App. 1967) ("when a bank receives money to be applied to a particular purpose and it fails to properly apply it, such bank becomes a trustee and is answerable to the owner of the money as for a breach of trust"). By taking the Trust Funds for itself, Ibanera breached its fiduciary duties to Deltec. *Brigham v. Brigham*, 11 So. 3d 374, 386 (Fla. Dist. Ct. App. 2009) (trustee who misappropriated trust funds for his own benefit breached his fiduciary duties to the beneficiary). Deltec is therefore likely to succeed in demonstrating it is entitled to equitable relief including a constructive trust over the Trust Funds and disgorgement of any profits Ibanera has earned from withholding the Trust Funds. *Williams v. Stanford*, 977 So. 2d 722, 730 (Fla. Dist. Ct. App. 2008) ("A constructive trust is an equitable remedy available in cases dealing with breaches of fiduciary duty; such an instrument restores property to its rightful owner and prevents unjust enrichment"); *Herman v. S.C. Nat'l Bank*, 140 F.3d 1413, 1422 (11th Cir. 1998) ("disgorgement of profits is a distinctly equitable remedy different from the legal remedy of compensatory damages for breach of fiduciary duty").

### c. Deltec is likely to succeed in its claim that Defendants converted the Trust Funds.

"Under Florida law, conversion is an 'unauthorized act which deprives another of his property permanently or for an indefinite period of time.'" *Indus. Park Dev. Corp. v. Am. Express Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (S.D. Fla. 2013) (quoting *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1291 (11th Cir. 2001)). To prove a claim for conversion, a plaintiff must demonstrate (1) ownership of the subject property, and (2) the defendants' wrongfully asserted dominion over that property. *Id.*

Money may be subject to a conversion claim where the recipient is obligated to keep the money at issue intact or deliver it to another. *Gilbert & Caddy, P.A. v. JP Morgan Chase Bank,*

14

*N.A.*, No. 15-CV-60653, 2015 WL 12862724, at \*6 (S.D. Fla. Aug. 20, 2015). The subject monies must be specific and identifiable, which is the case where the deposit is special and the identical money is to be kept for the party making the deposit. *Id.* citing *Tambourine Comercio Int'l SA v. Solowsky*, 312 F. App'x 263, 272 (11th Cir. 2009).

Ibanera expressly agreed that the Trust Funds would be used only in strict accordance with Deltec's payment instructions and that the funds continued to belong to Deltec. (AC ¶¶ 25-27.) Therefore, the Trust Funds are "specifically identifiable" and can be converted. Ibanera has wrongfully asserted dominion over the Trust Funds by refusing to transmit them as instructed and expressing in writing its intent to "keep" the funds. (Moore Decl., Ex. I.) Thus, Deltec is likely to succeed with its conversion claim.

### d. Deltec is likely to succeed on its claim that Defendants have been unjustly enriched.

"There are three elements for an unjust enrichment claim under Florida law: (1) plaintiff conferred a benefit upon the defendant, who has knowledge of that benefit; (2) defendant accepts and retains the conferred benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it." *Vibo Corp., Inc. v. Us Flue-Cured Tobacco Growers, Inc.*, 762 F. App'x 703, 705 (11th Cir. 2019) (internal quotations omitted).[3]

As explained above, in trusting Ibanera with the Trust Funds, Deltec conferred a benefit upon Defendants, who knowingly accepted the Trust Funds and has wrongfully retained them for

---

[3] "[B]oth the Federal Rules of Civil Procedure and Florida law permit a party to allege, in the alternative, recovery under an express contract and seek equitable relief under the theory of unjust enrichment. In a case such as this, alternate pleading allows for a plaintiff's case to proceed in the face of uncertainty as to the existence of a contract or, perhaps, uncertainty as to whether the particular issue at hand falls within the ambit of a contract that otherwise exists between the parties." *Donnelly v. Circuit City Stores, Inc.*, No. 5:06-cv-387-Oc-10GRJ, 2007 WL 896337, at \*3 (M.D. Fla. Mar. 22, 2007).

their own benefit. Defendants have no legal right to retain these funds, and it would be the definition of inequity to allow Defendants to keep the benefits of those funds. "Florida courts have long recognized a cause of action for unjust enrichment 'to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity.'" *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) (quoting *Butler v. Trizec Props., Inc.*, 524 So.2d 710, 711 (Fla. 2d DCA 1988)). "If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment." *Id.* Defendants were never legally entitled to keep the Trust Funds for themselves, and, accordingly, Deltec is likely to succeed on its claim for unjust enrichment.

### e. Deltec is likely to succeed on its claim for wrongful set-off.

"If a bank has improperly used funds from a special deposit to offset a separate debt of the account holder, the legal or equitable owner of the funds may bring an action for wrongful setoff against the bank." *United States Fire Ins. Co. v. FineMark Nat'l Bank & Tr.*, No. 2:22-CV-130-SPC-KCD, 2023 WL 145013, at *3 (M.D. Fla. Jan. 10, 2023). As set forth above, Ibanera has refused to disclose any grounds for its claim that Deltec has caused Ibanera to suffer losses or otherwise owes Ibanera money. However, even if that were true, Deltec would be likely to succeed with its claim for wrongful set-off because the Trust Funds are special deposits that Ibanera cannot take to satisfy other alleged obligations. Moreover, Ibanera has wholly failed to demonstrate, disclose, or reveal in any way what its so-called losses might be, or that the entirety of the Trust Funds are somehow the proper set off.

### 2.  There is a likelihood of irreparable harm to Deltec.

Here, Plaintiff has identified specific funds—i.e., the Trust Funds—that "stand to be

dissipated completely, thus creating a danger of significant loss or damages to Plaintiff." *8th Sense, Inc. v. Humes McCoy Aviation, Inc.*, No. 21-cv-22792-KMM, 2021 WL 8202671, at *3 (S.D. Fla. Dec. 15, 2021) (internal citations omitted). That is, Plaintiff has demonstrated that it will "suffer irreparable injury in the absence of a TRO" as Defendants may "dissipate all of the funds held in trust." *Id.* Therefore, a TRO is warranted in this case.

In *Ga. Banking Co. v. GMC Lending & Mortg. Servs. Corp.*, 923 So. 2d 1224 (Fla. Dist. Ct. App. 2006), temporary injunctive relief freezing funds held in trust was warranted to prevent the dissipation of those funds. In that case, the court found that plaintiff had "claimed the existence of specific, identifiable trust funds [that Defendant] refused to turn over. Injunctive relief is appropriate to prevent dissipation of the funds in such circumstances." *Id.* at 1225; *see also ECapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*, 519 F. Supp. 3d 1129, 1136 (S.D. Fla. 2021) (granting a TRO to preserve the *status quo* and prevent irreparable harm pending an adjudication of the parties' contractual rights "in an orderly setting" before any funds were disbursed).

A similar outcome is warranted here to prevent the dissipation of the Funds and allow the parties to adjudicate the matter in an orderly setting and not at the whim of Defendants.

### 3. There is no adequate remedy at law.

There is no adequate remedy at law in this case. Deltec has identified specific Trust Funds that were to be held in trust by Ibanera. To date, Ibanera has refused to disclose the location of the Trust Funds or the amount of the remaining Trust Funds, and has refused to release the Trust Funds despite numerous, escalating demands by Deltec. In this instance, a monetary remedy would be insufficient. *See Ga. Banking Co.*, 923 So. 2d at 1225 (rejecting that a monetary judgment is an adequate remedy at law where defendants "refused to turn over"

17

"specific, identifiable trust funds").

### 4.   The threatened injury to Deltec outweighs any harm to Defendants.

The threatened injury to Deltec in this case—i.e., the total or partial dissipation of the Trust Funds—greatly outweighs any harm to Defendants. Indeed, Defendants are supposed to be holding the Trust Funds in trust for Deltec and have no right to use the Trust Funds whatsoever. A Temporary Restraining Order freezing assets will preserve the *status quo*, and otherwise will not impact or harm Defendants in any way. *See 8th Sense*, 2021 WL 8202671 at *3 (TRO granted where threatened injury to Plaintiff outweighed any "minimal, if not non-existent" harm to defendants, who were merely holding funds in trust and not for personal use); *ECapital*, 519 F. Supp. 3d at 1136 (granting TRO where "[t]he only possible harm that would befall Defendants . . . would be a minor delay in receiving funds owed," if any, from the accounts being held in trust).

### 5.   A temporary injunction will not disserve the public interest.

Preventing the further dissipation of the Trust Funds will not disserve the public interest. To the contrary, a TRO would ensure that Plaintiff may eventually be made whole, which is "in furtherance of the public interest." *8th Sense*, 2021 WL 8202671 at *3; *see also ECapital*, 519 F. Supp. 3d at 1136-37.

### B.   An asset freeze is necessary.

To preserve its ability to award final relief, the Court should enter an asset freeze order sufficient to protect Deltec's stolen funds. Although courts generally will not freeze assets where the plaintiff "seek[s] legal relief in the form of money damages," district courts can "issue an asset freeze order where equitable relief is sought." *Absolute Activist Value Master Fund Ltd. v. Devine*, No: 2:15–cv–328–FtM–29DNF, 2015 WL 12838168, at *23 (M.D. Fla. July 1, 2015)

(citing *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995)). It is

the request for equitable relief that "invokes the district court's inherent equitable powers to

order preliminary relief, including an asset freeze, in order to assure the availability of permanent

relief." *Levi Strauss & Co.*, 51 F.3d at 987. This is true "even if the request for equitable relief is

coupled with requests for money damages." *Absolute Activist*, 2015 WL 12838168, at *23 (*citing

SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005)). Moreover, an asset freeze

order can properly extend to misappropriated assets located offshore. *SEC v. Illarramendi*, No.

3:11CV78 (JBA), 2011 WL 2457734, at *4 (D. Conn. June 16, 2011).

Here, Deltec seeks a number of equitable remedies, including an accounting,

disgorgement, and the imposition of a constructive trust. Given Defendants' obtrusive and bad

faith conduct to date, there is ample reason to believe that Deltec's assets may be further

dissipated if no action is taken to protect the Trust Funds while this case is pending. The Court,

therefore, should exercise its "authority to issue a freeze order" to protect its ability to award

final relief. *See id.* (granting plaintiff's request for an asset freeze*); Chanel, Inc. v.

7perfecthandbags.com*, No. 12–22057–CIV, 2013 WL 1857137, at *7-8 (S.D. Fla. May 2, 2013)

(granting asset freeze).[4]

### C.  An expedited accounting is appropriate and necessary.

To obtain an accounting under Florida law, a party must show either (1) a sufficiently

complicated transaction and an inadequate remedy at law or (2) the existence of a fiduciary

---

[4] The Order should not only cover the account or accounts where Deltec's assets are being held,
but should also restrain Defendants and all those acting for or in concert with them from
"transferring, selling, alienating . . . or otherwise disposing of any asset," in an amount equal to
Deltec's funds, except as "otherwise ordered by the Court." *CFTC v. Chilcott*, No. 02-CV-
00094, Dkt. No. 8, at 3 (M.D. Fla. Mar. 7, 2002).

relationship. *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1311 (11th Cir. 2014). "'In the latter situation, an accounting is appropriate in every case,' including where the fiduciary relationship is that of a principle and agent." *Silverboys, LLC v. Joelsson*, No. 19-23171-CIV-WILLIAMS, 2020 WL 13401917, at *13 (S.D. Fla. Nov. 30, 2020) (quoting *Zaki*, 771 F.3d at 1311). Moreover, "accountings are frequently and routinely ordered in conjunction with an asset freeze." *FTC v. AMG Servs., Inc.*, No.: 2:12-cv-00536-GMN-VC, 2016 WL 1275612, at *6, n.7 (D. Nev. Mar. 31, 2016); *SEC v. Johnson*, Case No. 01-7874-Civ-Hurley/Lynch, 2001 WL 37114666, at *5 (S.D. Fla. Dec. 31, 2001) ("the possible dissipation of assets and destruction of records make an asset freeze necessary so that a detailed accounting may be undertaken").

As discussed in detail above, there is a plain fiduciary relationship between Plaintiff and Defendants. Specifically, Deltec delegated power to—and entrusted—Defendants to hold its Trust Funds "in trust" and to disburse those funds upon request as contemplated by the parties' contractual relationship. *Zaki*, 771 F.3d at 1311 ("Florida law imposes fiduciary obligations—where one party delegates power to another to carry out a specific task on his behalf, and in so doing, reposes significant trust and confidence in the other."). In such circumstances, Plaintiff "is entitled to an accounting under Florida law." *See Samana Inc. v. Lucena*, 156 F. Supp. 3d 1373, 1374 (S.D. Fla. 2016) ("[T]he Court finds that because Plaintiff has alleged that the Parties had a fiduciary relationship, the Plaintiff may properly state a claim for equitable accounting.").

Further, Defendants have refused to confirm the amounts they are holding, but have stated that there is a discrepancy in the amounts Deltec believes Defendants are holding on its behalf and how much Defendants are in fact holding. (Moore Decl., Ex. F.) Defendants know and can easily provide the answer to this question, but they refuse to do so. (Moore Decl., Exs. A-I.) An accounting is therefore urgent and necessary to assist Deltec in "quantifying its

damages" and ultimately obtaining "meaningful relief." *See Zaki*, 771 F.3d at 1314 (accounting warranted because "without the foundational information that an accounting [provides], [plaintiff] was incapable of quantifying its damages, and was thereby precluded from obtaining any meaningful relief").

### D.  A repatriation order should be entered.

Deltec also seeks an order requiring Defendants to repatriate any of the Trust Funds that are located overseas to the United States and deposit them in an account and at a financial institution approved by the Court, where they shall remain frozen.

Courts may order the repatriation of foreign assets pursuant to their equitable powers to preserve the *status quo*. *See Illarramendi*, 2011 WL 2457734 at *6. Repatriation orders are "necessary and appropriate to preserve and keep intact such funds to satisfy future disgorgement remedies." *Id.* at *6-7 ("[W]here the Court has the authority to order equitable relief such as an asset freeze in order to preserve particular funds in anticipation of potential future disgorgement, it also has the authority to order repatriation of assets to effectuate that freeze order."); *SEC v. Lottonet*, *Operating Corp.*, No. 17-21033-CIV-LENARD/GOODMAN, 2017 WL 6949289, at *21  (S.D. Fla. Mar. 31, 2017) ("The SEC presented evidence that [defendants] have sent investor funds overseas and that [defendant's] subsidiary . . . holds an account in Peru. Under these circumstances where investor funds are overseas, a repatriation order will enable the retrieval of investor funds diverted overseas.").

Here, Defendants have refused to disclose where the Trust Funds are presently held. To the extent the Trust Funds are overseas, Deltec requests that the Court order Defendants to do nothing with the Trust Funds other than comply with the Court's repatriation order. Allowing Defendants to keep the Trust Funds in foreign accounts unnecessarily increases the significant

risk that those funds will be dissipated or otherwise unreachable by Deltec or the Court at the conclusion of this case.

**E.  Expedited discovery is necessary to determine the disposition of the Trust Funds.**

In deciding whether a party has shown good cause for expedited discovery, courts frequently consider the following factors: (1) whether a motion for preliminary injunction or temporary restraining order is pending; (2) the breadth of the requested expedited discovery; (3) the reasons the moving party is requesting expedited discovery; (4) the burden on the opponent to comply with the request for expedited discovery; (5) whether the information sought expeditiously could be obtained more efficiently from some other source; (6) the extent to which the discovery process would be expedited; and (7) whether a motion to dismiss for failure to state a claim is pending. *Mullane v. Almon*, 339 F.R.D. 659, 663 (N.D. Fla. 2021).

These factors weigh in favor of ordering limited expedited discovery regarding the Trust Funds in this case. The instant Motion for preliminary injunction and a temporary restraining order is pending. Deltec requests only limited discovery concerning the location of, control over, and disposition of the Trust Funds—and not discovery regarding the underlying merits of this action. Deltec is requesting expedited discovery to protect its own property, the Trust Funds, in the possession of a fiduciary who refuses to respond to requests for information. Defendants alone have this information, so no other avenue exists to Deltec to discover this information otherwise. Deltec asks for the Court to order disclosure of documents within 10 days, and potentially a deposition of Michael Carbonara within 20 days. No motion to dismiss is pending.

The particular information Defendants should produce is set forth below:

- Bank statements from October 2024 through the present for each bank account in which funds deposited by, for, or on behalf of Deltec ("Deltec Funds") have been held at any time during that period;

- Documents sufficient to show ownership and control over all such bank accounts that hold or have held Deltec Funds;

- If any Deltec Funds have been used by Defendants for any purpose or in any other way other than according to Deltec's payment instructions, documents sufficient to evidence such use, including the sender, recipient, and reason for any transfer of the Deltec Funds;

- If any Deltec Funds have been converted to any other currency or cryptocurrency, documentation sufficient to show the conversion rate, time of conversion, and reasons for the conversion.

Once Defendants produce their accounting and the documents referenced above, it may be necessary to take the deposition of Michael Carbonara to explain the information. If the information is self-explanatory, then no such deposition will be necessary. Deltec asks the Court to order the deposition to take place, if necessary, within 20 days of its Order.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiff Deltec Bank and Trust Limited respectfully requests that the Court grant this Expedited Motion for a Temporary Restraining Order and Preliminary Injunction freezing assets, an immediate accounting, limited expedited discovery, and any and all further relief as the Court deems just and necessary.

Dated: May 6, 2025                    Respectfully submitted,

**VENABLE LLP**

 _/s/ Jonathan E. Perlman_
Jonathan E. Perlman (Bar No. 773328)
jeperlman@venable.com
Joseph B. Isenberg (Bar No. 1018077)
jbisenberg@venable.com
801 Brickell Avenue, Suite 1500
Miami FL 33131
Telephone:  305-349-2396
Facsimile:  305-349-2310

Desirée Moore
dmoore@venable.com
Abram Moore
amoore@venable.com
227 W Monroe St. #1900
Chicago, IL 60606

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 6, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification to the attorneys of record and is available for viewing and downloading.

By: */s/ Jonathan E. Perlman*
Jonathan E. Perlman