UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-CV-20978-MD

DELTEC BANK & TRUST LIMITED,

Plaintiff,

v.

MICHAEL CARBONARA, IBANERA LLC,
and IBANERA PRIVATE LIMITED,

Defendants.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
TO UPHOLD CONFIDENTIALITY DESIGNATION PURSUANT TO STIPULATED
PROTECTIVE ORDER**

## I.        INTRODUCTION

Defendants, having publicly accused Deltec of causing Ibanera's bank in Singapore to suddenly close Ibanera's accounts, now asks the Court to shield from the public a document produced by a third party (Ibanera has yet to produce a single document relating to the DBS account closure) revealing that their story was false. This motion is frivolous and a waste of the Court's resources. There is nothing even arguably confidential in the document – other than potentially some old account numbers for closed accounts, which Deltec has proposed redacting.

**A.        The document at issue disproves Defendants' public testimony that DBS unilaterally and suddenly closed Ibanera's account because of Deltec.**

Defendants maintain that they are entitled to keep over $20 million belonging to Deltec because Deltec's conduct purportedly caused the Development Bank of Singapore ("DBS") to suddenly close the account Ibanera used to hold Ibanera's funds. (ECF No. 114, Defs.' Mot. for Protective Order ("Motion") at 2.) Indeed, Michael Carbonara submitted a public declaration swearing that "unilaterally and without notice, DBS closed the account . . ." [ECF No. 47-2 at p. 2.] He gave the following public testimony:

Q. So DBS hasn't communicated any reason for why it closed the account?

A. It's not typical for any bank to give those reasons.

Q. And DBS didn't?

A. Correct.

Hearing Tr., *Deltec Bank & Trust Ltd. v. Carbonara*, No. 1:25-cv-20978-MD (S.D. Fla. May 16, 2025), 57:9-13. Carbonara swore that "In late 2024, unilaterally and without notice, DBS closed the account of Ibanera Private Ltd." [ECF 47-2 at 4.] Defendants even publicly submitted a purported expert report in support of that conclusion. [ECF No. 47-1 at ¶ 42.]  In a public opinion, the Court relied upon Ibanera's claim that DBS closed the account. ECF No. 90 at 8, 17 ("DBS

1

closed Ibanera Private Limited's multicurrency account due to regulatory noncompliance") ("Defendants presented evidence that Ibanera Private Limited's DBS account was closed due to noncompliance with applicable regulatory requirements").

There is voluminous additional public information in this case relating to how and why Ibanera's DBS account was closed and what happened to Deltec's funds thereafter. *See* Hearing Tr., *Deltec Bank & Trust Ltd. v. Carbonara*, No. 1:25-cv-20978-MD (S.D. Fla. May 15, 2025), 172:10-20 (the DBS "account was specifically set up to support regulated financial institutions, such as Ibanera Private Limited"), 173:22-25 ("Ultimately, we went back to DBS, and they said accounts are closed. And they subsequently issued checks for the various currencies, and mailed those physical checks to the Ibanera Singapore office"), 174:19-22; ("initially several banks were contacted and applied to, to try to open a corporate account, to receive those checks, but those accounts just weren't approved"), 176:5-11 (Ibanera Singapore asked if DBS would wire funds " [a]nd eventually DBS compliance department approved to send the funds to -- Ibanera Singapore had an account with a company called Nium"); 82:1-83:9, 97:17-98:2 (after DBS, Deltec's funds were moved to Green Link bank).

Defendants made all of that testimony accessible to the public. What they hope to keep confidential and hidden is the truth: that DBS *did not*, unilaterally and without notice, close the Ibanera account. In fact, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[1] This is set forth clearly in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that Defendants seek to keep confidential under this Court's Protective Order. The ▮▮▮▮ is a core piece of evidence in this case, demonstrating that Michael Carbonara gave false testimony in an attempt to substantiate a

---

[1] Although Deltec is redacting information to mirror the redactions in Ibanera's brief, it does not concede that any redacted information herein is confidential and will file an unredacted brief if the Court denies the pending Motion.

phony justification for taking Deltec's funds.  Treating this as confidential will likely require the sealing of numerous filings by Deltec going forward.

**B.   There is no protectable confidential non-public information in the ▇▇▇▇▇.**

There is nothing confidential about the ▇▇▇▇▇, and Deltec has already agreed to redact the account numbers in that ▇▇▇.

**Account numbers.** Defendants argue that the account numbers of the accounts *that have been closed since October 2024* are confidential. They fail to disclose that, on September 23, 2025, Deltec's counsel asked Ibanera's counsel to agree that a version of this document with the account numbers redacted was not confidential. (Email attached as Exhibit C-1.)  Ibanera's counsel never responded.  Deltec made the same offer in the parties' conferral, while also questioning why the numbers for long-closed accounts are confidential.  In any event, Deltec has never objected to the redaction of the account numbers for these long-closed accounts – and indeed proposed as much.

**Confidential business practices and decisions.** Defendants are left arguing that the ▇▇▇ ▇▇▇ somehow reveals "confidential business practices and decisions." (*See* Motion at 3.) Defendants characterize the ▇▇▇▇▇ as including "sensitive, non-public communications with a [former] banking partner" "regarding the closure of specific accounts and the transfer of funds" including "transfer instructions, and the identities of the parties involved." (*Id*.)  The closure of these accounts is a matter of public record.  The fact that the funds were transferred out of these accounts is already in the public record.  Deltec itself has proposed the redaction of all account numbers from the transfer instructions.  The mere identities of the parties to the communication is not confidential – even privilege logs of attorney-client privileged communications must reveal this information.

Defendants' position regarding what is and what is not confidential is summarized as follows:

| Public non-confidential information | Protectable confidential business decision |
|---|---|
| • Ibanera had an account with DBS in Singapore.<br><br>• The account was set up to support Ibanera Singapore as a regulated financial institution.<br><br>• In October 2024, "unilaterally and without notice, DBS closed the account."<br><br>• Ibanera met with DBS to discuss how to get the funds out of the accounts.<br><br>• DBS sent checks, but Ibanera could not cash the checks.<br><br>• Ultimately, Ibanera persuaded DBS to wire funds to an Ibanera account with Nium.<br><br>• At some point, the funds were with Green Link bank. | • ███████████████████████████<br>  ███████████████<br><br>• ███████████████████████████<br>  ██████ |

The purportedly confidential information is not different in kind from the public information. Indeed, it relates to the very transaction – the closing of the DBS accounts – as the public information. The only information in the ████████ that is non-public is ███████████ ████████████████████████████ It is not surprising that Defendants want to hide this fact. But that does not make it protectable confidential information.

### C.   There is no good cause to retain defendant's confidentiality designation.

Under this Court's Protective Order, Defendants have the burden to show good cause. Protective Order § 6.3 ("The burden of persuasion in any such challenge proceeding shall be on the Designating Party."). They failed to do so.

Defendants cite *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, 9:17-CV-80495, 2018 WL 3118266 (S.D. Fla. June 25, 2018) for the proposition that good cause exists when discovery is ongoing, and material is not currently being used for the merits. But in that case, the Court based its conclusion that good cause existed on a finding that the material at issue contained trade secrets.

4

*Id*. at \*4 ("The Court finds that Defendants have met its burden to show that there is good cause for the narrative answers to remain confidential at this juncture because the narrative answers contain information that constitute 'trade secrets.'"). There are obviously no trade secrets in the DBS Letter. Defendants' conclusory statements about "reputational and commercial harm" are also vague and specious. *See* Motion at 4; *PayCargo, LLC v. CargoSprint LLC*, 1:19-CV-22995, 2021 WL 2072446, at \*2 (S.D. Fla. May 24, 2021) ("Where a challenge to such designations is made, the party seeking to uphold the designations must describe the alleged harm it will suffer from any disclosure with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." (citation modified)). Any reputational harm Defendants may suffer as a result of the disclosure of the ▮▮▮▮▮▮ would arise from the fact that Ibanera LLC's CEO repeatedly gave false testimony to this Court.

## D.  Defendant Mischaracterizes Deltec's Position

Lastly, Defendants assert that Deltec wishes to remove the confidentiality designation "because it purportedly contradicts arguments advanced by Ibanera" for "no discernible purpose other than to harass Defendants." (Motion at 5, 1.)  Defendants are wrong. Deltec seeks the removal of the confidentiality designation because the ▮▮▮▮▮, as redacted, would contain nothing confidential. The ▮▮▮▮▮ is critical to Deltec's case, and the burden associated with strict confidential treatment of the document will only grow as this litigation continues, and for no good reason.

## II.      CONCLUSION

For the reasons stated above, the Court should find that the document, as redacted, does not implicate the Protective Order and that Defendants have shown no good cause to maintain its confidentiality. The Court's order should require Defendant to remove the ▮▮▮▮▮ confidentiality designation.

5

Respectfully submitted,

Dated: November 20, 2025     **VENABLE LLP**

         */s/ Daniel J. Hayes*
Jonathan E. Perlman (Bar No. 773328)
JEPerlman@venable.com
Joseph B. Isenberg (Bar No. 1018077)
jbisenberg@venable.com
801 Brickell Avenue, Suite 1500
Miami FL 33131
Telephone:  305-349-2396
Facsimile:  305-349-2310

Desirée F. Moore (admitted *pro hac vice*)
dmoore@venable.com
Abram I. Moore (admitted *pro hac vice*)
amoore@venable.com
Daniel J. Hayes (admitted *pro hac vice*)
djhayes@venable.com
227 W Monroe St. #1900
Chicago, IL 60606
Telephone: (312) 820-3400
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 20, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification to the attorneys of record and is available for viewing and downloading.

By: */s/Daniel J. Hayes*