**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-20978-CIV-DAMIAN/D'Angelo**

**DELTEC BANK & TRUST LIMITED**,

Plaintiff,

v.

**MICHAEL CARBONARA and IBANERA LLC,**

Defendants.
______________________________________/

**ORDER ON REPORT AND RECOMMENDATION [ECF NO. 185]**
**AS TO DEFENDANTS' MOTION TO DISMISS [ECF NO. 158]**

**THIS CAUSE** is before this Court on United States Magistrate Judge Ellen F. D'Angelo's Report and Recommendation, entered on August 3, 2026 [ECF No. 185 (the "Report")], in which the Magistrate Judge recommends that the Motion to Dismiss Second Amended Complaint [ECF No. 158 (the "Motion")], filed February 6, 2026, by Defendants, Ibanera LLC ("Ibanera") and Michael Carbonara ("Carbonara") (collectively, "Defendants"), be granted in part and denied in part.

Defendants timely filed Objections to the Report [ECF No. 191 (the "Objections")] on August 17, 2026, and Plaintiff filed its Response in Opposition to the Objections [ECF No. 193 (the "Response")] on August 31, 2026. The matter is now ripe for review.

THE COURT has carefully reviewed the Report, the Objections, the underlying Motion and related submissions, the pertinent portions of the record, and applicable law and is otherwise fully advised in the premises. After a careful, *de novo* review, this Court agrees with the well-reasoned findings and thorough analyses and conclusions in the Report and agrees with Judge D'Angelo's recommendations, as set forth below.

## I. BACKGROUND

The background and procedural history are set forth in the Report. The Second Amended Complaint is at issue. In the Second Amended Complaint, Deltec asserts eight claims against the Defendants in the Second Amended Complaint: breach of contract against Ibanera (Count I); breach of fiduciary duty against Ibanera (Count II); aiding and abetting breach of fiduciary duty against Carbonara (Count III); conversion against Ibanera (Count IV); aiding and abetting conversion against Carbonara (Count V); civil theft against Ibanera and Carbonara (Count VI); unjust enrichment against Ibanera and Carbonara (Count VII); and defamation against Ibanera and Carbonara (Count VIII). Second Am. Compl. ¶¶ 115–176. The Second Amended Complaint followed Deltec's voluntary dismissal of IPL after Defendants challenged subject-matter jurisdiction on the ground that Deltec and IPL are both foreign corporations. [ECF Nos. 116, 128, 154].

Defendants moved to dismiss the entire action under Federal Rules of Civil Procedure 12(b)(7) and 19, arguing that Ibanera Private Limited ("IPL") is a required and indispensable party whose joinder would destroy this Court's diversity jurisdiction. Mot. 7–14. In the alternative, Defendants moved under Rule 12(b)(6) to dismiss Counts II through VIII. *Id.* at 14–29. Defendants principally argued that Deltec's non-contract claims impermissibly repackaged its breach-of-contract claim; that Deltec had not adequately alleged independent fiduciary duty, conversion, civil theft, unjust-enrichment, or aiding-and-abetting claims; and that the allegedly defamatory statements did not support a viable defamation claim. *Id.* at 14–29.

Deltec opposed dismissal. According to Deltec, IPL is neither required under Rule 19(a) nor indispensable under Rule 19(b) because Ibanera and IPL are joint obligors under

the PSA, this Court can accord complete relief among the existing parties, and IPL's asserted interests do not require its presence. Opp'n 4–15. Deltec further argued that the PSA's treatment of its funds as segregated funds held in trust supports duties and tort claims independent of Ibanera's contractual obligation to return the funds; that Carbonara may be held liable for tortious conduct in which he personally participated; and that the Second Amended Complaint adequately alleges defamation. *Id.* at 15–30.

In Reply, Defendants maintained that IPL is required and indispensable because the PSA creates rights and obligations involving both Ibanera entities and because IPL allegedly possesses contractual and setoff rights that cannot adequately be adjudicated in its absence. Reply 1–4. Defendants also disputed Deltec's "special deposit" theory, maintained that the independent tort doctrine bars the tort claims, challenged Carbonara's individual liability, and argued that the defamation allegations are legally insufficient. *Id.* at 4–10.

After considering the parties' briefing and hearing argument, Judge D'Angelo issued the Report, in which she recommends denying Defendants' request to dismiss the action under Rules 12(b)(7) and 19 because IPL is not a required party under Rule 19(a) and, alternatively, is not indispensable under Rule 19(b). Report 8–21. As to the individual claims, the Magistrate Judge recommends denying the Motion as to Counts II, IV, VI, and VIII; dismissing Counts III, V, and VII with prejudice; and requiring Ibanera to answer Count I, which Defendants did not seek to dismiss under Rule 12(b)(6). *Id.* at 21 n.7, 22–43.

Defendants filed Objections to the Report in which they specifically object to the recommendations that: (1) IPL is not a required and indispensable party under Rule 19; (2) Count II states a claim for breach of fiduciary duty against Ibanera; (3) Count VI states a civil theft claim against Carbonara; and (4) Count VIII states a defamation claim. Objs. 3–19.

Plaintiff responds that the Report correctly resolved each issue and that Defendants' Objections largely repeat or expand upon arguments presented to Judge D'Angelo. Resp. 1–19.

No party specifically objects to the Report's recommendations concerning Count I, Count III, Count IV, Count V, Count VI as asserted against Ibanera, or Count VII. The undersigned notes that in the conclusion of Defendants' Objections, Defendants request dismissal of Count IV, but they do not identify any specific finding or conclusion concerning the Report's conversion analysis and provide no argument supporting dismissal of that Count. *See* Objs. 2–19. Plaintiff likewise notes that Defendants identify no substantive objection to Count IV. Resp. 1 n.1.

## II. LEGAL STANDARD

A district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). When a magistrate judge's "disposition" has properly been objected to, district courts must review the disposition *de novo*. Fed. R. Civ. P. 72(b)(3). When no party has timely objected, however, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's notes (citation omitted).

Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged Congress's intent was to only require a *de novo* review where objections have been properly filed, not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when

neither party objects to those findings."). In any event, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

Accordingly, this Court reviews *de novo* the Report's recommendations concerning Rule 19, Count II, Count VI as asserted against Carbonara, and Count VIII. The remaining recommendations are reviewed for clear error.

## III. DISCUSSION

Defendants object to four parts of the Report: (1) the recommendation that this action not be dismissed for failure to join IPL under Federal Rule of Civil Procedure 19; (2) the recommendation that Count II, for breach of fiduciary duty against Ibanera, proceed; (3) the recommendation that Count VI, for civil theft, proceed against Carbonara; and (4) the recommendation that Count VIII, for defamation, proceed. Objs. 3–19. This Court addresses each objection in turn.

### *A. Whether IPL Is A Required and Indispensable Party Under Rule 19.*

Defendants first object to the Magistrate Judge's conclusion that IPL is not a required or indispensable party under Rule 19. *Id.* 3–9. According to Defendants, the PSA creates an integrated contractual relationship among Deltec, Ibanera, and IPL; Ibanera and IPL are joint obligees with respect to Deltec's contractual obligations; and IPL possesses contractual rights, including potential setoff rights and affirmative claims against Deltec, that cannot adequately be protected in IPL's absence. *Id.* at 5–9. Defendants further argue that IPL cannot intervene without destroying diversity jurisdiction and that the availability of a Florida state-court forum in which all three parties could litigate their claims favors dismissal. *Id.* at 5–8.

Upon *de novo* review, this Court agrees with the Magistrate Judge's determination that IPL's absence does not warrant dismissal.

As the Magistrate Judge explains in the Report, Rule 19 requires a two-step inquiry. First, this Court determines whether the absent party is required under Rule 19(a). *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011). If the absent party is required but cannot feasibly be joined, this Court then determines under Rule 19(b) whether, "in equity and good conscience," the action should proceed without that party. *Id.*; Fed. R. Civ. P. 19(b).

**1. Whether IPL Is A Required Party Under Rule 19(a).**

Rule 19(a)(1)(A) requires joinder when, in the absent party's absence, "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). The inquiry concerns the relief available among the parties already before this Court, not whether every dispute involving an absent party can be resolved in the same proceeding. *See Molinos*, 633 F.3d at 1344–45.

Here, Deltec seeks to hold Ibanera liable for Ibanera's alleged breach of the PSA. In the Second Amended Complaint, Deltec alleges that the PSA treated Ibanera and IPL collectively as "Ibanera," that IPL transferred all of Deltec's funds to Ibanera after IPL ceased operations, and that Ibanera thereafter assumed IPL's liabilities to its customers and exercised exclusive custody and control over the Trust Funds. Second Am. Compl. ¶¶ 32, 62, 66–68. At this stage, those allegations must be accepted as true.

Defendants first object to the Magistrate Judge's determination that complete relief can be afforded between Deltec and Ibanera, arguing that IPL and Ibanera are joint obligees under the PSA and that IPL cannot later intervene without destroying diversity. Deltec

responds that Defendants' joint-obligee theory depends on anticipated counterclaims that have not been filed and that any setoff defense belonging to Ibanera can be asserted without IPL. Resp. 4–5.

This Court agrees with the Magistrate Judge's finding that, with respect to Deltec's presently asserted breach of contract claim, Ibanera and IPL are joint *obligors*, not joint obligees. The Eleventh Circuit has expressly distinguished the two. *Brackin Tie, Lumber & Chip Co. v. McLarty Farms, Inc.*, 704 F.2d 585, 587 (11th Cir. 1983). Although joint obligees generally must participate in an action seeking enforcement of the obligation owed jointly to them, joint obligors "are not generally held to be indispensable parties" to an action seeking to enforce their contractual liability. *Id.*; *see Camp v. Gress*, 250 U.S. 308, 316–17 (1919). Thus, IPL's status as another party obligated under the PSA does not prevent this Court from adjudicating Ibanera's alleged liability to Deltec.

And as the Magistrate Judge found, Defendants' reliance on their anticipated counterclaims does not alter that conclusion. Defendants acknowledge that those counterclaims have not yet been filed and are presently "procedurally unripe." Objs. 3, 8. Whether Ibanera and IPL may be joint obligees with respect to a future claim against Deltec does not transform IPL into a joint obligee on Deltec's presently asserted claim against Ibanera. *See Brackin Tie*, 704 F.2d at 587 (distinguishing joint obligees from joint obligors). If Defendants later assert counterclaims that create a concrete joinder issue, this Court can address that issue on the claims and procedural posture then before it. Rule 19 does not require dismissal of Deltec's existing claims based on an anticipated claim that has not been pled.

This Court also agrees with the Magistrate Judge's conclusion that Defendants have not demonstrated that Rule 19(a)(1)(B) requires IPL's joinder. That provision applies where

an absent person "claims an interest relating to the subject of the action" and adjudicating the action without that person may either "impair or impede" the person's ability to protect that interest or leave an existing party subject to a "substantial risk" of incurring inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B).

Defendants argue, as they did in the underlying Motion, that a judgment entered in IPL's absence would not adequately resolve the controversy, citing IPL's asserted contractual and setoff rights. But the Second Amended Complaint alleges that IPL transferred all of Deltec's funds to Ibanera and that Ibanera assumed the corresponding customer liabilities. Second Am. Compl. ¶¶ 62, 66–68. Moreover, the PSA itself limits the contractual setoff right on which Defendants rely. Section 14.1 authorizes setoff "[a]s against the Operating Account," whereas Section 2.8 provides that funds in the Segregated Client Accounts remain Deltec's property and prohibits Ibanera from using, encumbering, or otherwise disposing of those funds except in accordance with Deltec's Payment Instructions. PSA §§ 2.8, 14.1 [ECF No. 154-1]. The funds at issue are alleged to be Relevant Funds maintained in Segregated Client Accounts, not funds maintained in an Operating Account. Second Am. Compl. ¶¶ 66–68.

Defendants likewise have not identified a substantial risk that an existing party will incur inconsistent obligations. That inquiry is not satisfied merely because another proceeding could reach a different result. The relevant concern is whether an existing party could be subjected to obligations with which it cannot simultaneously comply. Here, even assuming IPL later obtains a judgment against Deltec concerning Deltec's own contractual obligations, Deltec could comply with that judgment and a separate judgment concerning Ibanera's

liability to Deltec. The possibility of different monetary judgments therefore does not establish the kind of inconsistent obligations contemplated by Rule 19(a)(1)(B)(ii).

Therefore, this Court agrees with the Magistrate Judge that Defendants have not shown that the Court cannot afford complete relief in the absence of IPL, and, as such, this Court agrees that IPL is not a required party under Rule 19(a).

**2. IPL Is Not Indispensable Under Rule 19(b).**

Defendants next object to the Magistrate Judge's determination that IPL is not an indispensable party under Rule 19(b). Rule 19(b) requires consideration of: (1) the extent to which a judgment rendered in IPL's absence might prejudice IPL or the existing parties; (2) whether any prejudice could be lessened or avoided; (3) whether a judgment rendered without IPL would be adequate; and (4) whether Deltec would have an adequate remedy if the action were dismissed. Fed. R. Civ. P. 19(b).

In their Objections, Defendants essentially reargue the points made in their Motion to Dismiss. That is, they argue that the prejudice to IPL and Defendants cannot be meaningfully cured if the case proceeds without IPL, that a judgment entered in the absence of IPL would not fully and adequately resolve the controversy, and that the availability of an adequate, alternative forum favors dismissal. Objs. at 7. As Deltec points out in its Response, Defendants' Rule 19(b) analysis largely expands upon the same prejudice, setoff, adequacy, and alternative forum arguments presented below. Resp. 1, 7–9.

Upon a review of the circumstances presented in this case, this Court agrees with the Magistrate Judge that a judgment on Deltec's claims will not bind IPL, and Defendants have not demonstrated that IPL will lose an existing claim merely because Deltec litigates its claims against Ibanera. And, any potential prejudice is further diminished by the allegations that IPL

transferred the relevant funds to Ibanera and ceased servicing Deltec and that Ibanera assumed IPL's customer liabilities. Second Am. Compl. ¶¶ 62, 66–68. As explained in the Report, a judgment can adequately resolve all claims currently asserted between the existing parties. Although Defendants correctly observe that a Florida state court would provide an adequate alternative forum in which IPL could participate, that consideration alone does not require dismissal where the remaining Rule 19 considerations favor allowing the action to proceed.

Accordingly, this Court overrules Defendants' objections to the Report on the issue of whether the Second Amended Complaint should be dismissed under Rule 19 on grounds IPL is an indispensable party. Because IPL is not indispensable, this Court need not resolve at this juncture the parties' disagreement over whether IPL could later intervene and invoke supplemental jurisdiction without destroying diversity.

***B. Whether Count II States a Claim for Breach of Fiduciary Duty.***

Defendants next object to the Magistrate Judge's recommendation that Count II proceed. They contend that the Magistrate Judge's conclusion that Plaintiff adequately pled a common law breach of fiduciary duty independent of the contract is wrong. Defendants contend that the independent tort doctrine bars the claim because any duties owed by Ibanera arise solely from the PSA; that the PSA expressly disclaims an agency relationship; and that the Florida cases concerning "special deposits" involve banks, whereas Ibanera is a money-services business. Objs. 9–12. Deltec responds that these objections repeat the same three premises presented to the Magistrate Judge (the independent-tort doctrine, the PSA's independent-contractor provision, and Ibanera's status as a money-services business) and maintains that Section 2.8's trust and ownership provisions support a limited fiduciary

relationship concerning the Trust Funds. Resp. 9–12. This Court agrees with the Magistrate Judge that at this, the pleading stage, Defendants' arguments do not warrant dismissal.

To state a claim for breach of fiduciary duty under Florida law, a plaintiff must allege the existence of a fiduciary duty, breach of that duty, and damages proximately caused by the breach. *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1288 (S.D. Fla. 2010) (King, J.). And Defendants are correct that a plaintiff in contractual privity may not simply recast a breach of contract claim as a tort claim. *See Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014) (Rosenbaum, J).

But, as the Magistrate Judge found, Count II alleges more than Ibanera's failure to perform a contractual payment obligation. The PSA provides that all funds sent by Deltec to the Segregated Client Accounts "shall be held in trust at all times by Ibanera for and on behalf of" Deltec and "for the sole benefit of" Deltec. PSA § 2.8 [ECF No. 154-1]. It further provides that Ibanera may not use, encumber, lien, promise, or otherwise dispose of those funds except in strict accordance with Deltec's Payment Instructions and expressly states that the Relevant Funds "remain the property of" Deltec and "will not constitute part of Ibanera's assets." *Id.* Under Florida law, an arrangement in which funds are entrusted for a specific purpose while title remains with the depositor differs from an ordinary debtor-creditor relationship and may give rise to a principal-agent relationship concerning those funds. *See Carl v. Republic Sec. Bank*, 282 F. Supp. 2d 1358, 1366–67 (S.D. Fla. 2003) (Hurley, J.) (explaining that a special deposit exists where funds are deposited for a specific purpose and that the depository acts as "bailee, trustee, or agent of the depositor, with title to the funds remaining in the depositor"); *O'Halloran v. First Union Nat'l Bank*, No. 01-CIV-1779, 2006 WL 8439872, at *5–6 (M.D. Fla.

June 26, 2006) (explaining that a special deposit creates a principal-agent relationship in which title remains with the depositor).

In the Second Amended Complaint, Deltec alleges that Ibanera did not merely refuse to execute Deltec's payment instructions. It alleges that Ibanera took property that remained Deltec's, converted approximately $18 million of that property from fiat currency to USDC, transferred the resulting digital assets to third-party exchanges to obtain benefits for itself, concealed those transactions, and continued displaying fiat balances that no longer existed. Second Am. Compl. ¶¶ 94–100, 123–28. Whether Deltec will ultimately prevail in proving these allegations is a matter for another day. At this stage, these allegations plausibly describe misuse and self-dealing with specifically entrusted property, not merely nonperformance of Ibanera's obligation to process a transfer. *See Keye v. Gautier*, 684 So. 2d 210, 211 (Fla. 3d DCA 1996) (recognizing breach of fiduciary duty where a trustee mismanaged and misappropriated trust funds for his own benefit); *McCormick v. Cox*, 118 So. 3d 980, 987 (Fla. 3d DCA 2013) (holding that a trustee's unilateral payment to himself from trust funds breached his fiduciary duties).

Defendants argue that the Magistrate Judge overlooked that the PSA, which is attached to the Second Amended Complaint, disclaims any agency relationship. Defendants' reliance on the PSA's independent-contractor provision does not, however, compel that conclusion. Review of the PSA's terms shows that Section 28.13 generally provides that the parties are independent contractors and not agents or employees of one another. But Section 2.8 specifically governs Ibanera's custody of the Segregated Client Account funds and expressly provides that Ibanera holds those funds "in trust," solely for Deltec's benefit, while ownership remains with Deltec. Those provisions are not necessarily inconsistent. An agency

relationship may be limited to a particular undertaking: it exists where one party manifests assent that another act on its behalf and subject to its control, and the other consents to do so. *See FDIC v. Floridian Title Grp., Inc.*, 972 F. Supp. 2d 1289, 1297 (S.D. Fla. 2013) (Moreno, J.) (quoting *Cheney v. IPD Analytics, L.L.C.*, No. 08-CIV-23188, 2009 WL 1298405, at *5 (S.D. Fla. Apr. 16, 2009), report and recommendation adopted *sub nom*. *Cheney v. IPD Analytics, LLC*, No. 08-CIV-23188, 2009 WL 2096236 (S.D. Fla. May 8, 2009) (Moreno, J.)). At the pleading stage, the PSA can plausibly be read to establish an arm's-length commercial relationship generally while imposing more limited fiduciary obligations concerning the specific property entrusted to Ibanera. Thus, Defendants' argument that there can be no fiduciary relationship is not well taken.

Defendants next object that the Magistrate Judge misconstrued their arguments regarding their contractual relationship with Deltec and the significance of the fact that Ibanera is not a bank. Objs. at 11. As set forth above, the PSA does not foreclose the possibility of a fiduciary relationship. Nor is dismissal warranted merely because Ibanera is a money-services business rather than a bank. Defendants correctly observe that the Florida decisions discussing "special deposits" generally arise in the banking context. *See, e.g.*, *Bryan v. Coconut Grove Bank & Tr. Co.*, 101 Fla. 947, 132 So. 481, 484–85 (1931); *Grillo v. City Nat'l Bank of Miami*, 354 So. 2d 959, 960 (Fla. 3d DCA 1978). But the relevance of those cases here is the distinction they draw between an ordinary debtor-creditor relationship, in which title to deposited funds passes to the recipient, and an arrangement in which identifiable funds remain the depositor's property and are entrusted to another for a specified purpose. *See Carl*, 282 F. Supp. 2d at 1366–67. Deltec alleges the latter, and Defendants identify no authority

holding that a non-bank entity cannot assume fiduciary obligations concerning identifiable property that it expressly agrees to hold in trust for another's sole benefit.

Thus, whether or not the arrangement ultimately satisfies all technical requirements of Florida's "special deposit" doctrine, the allegations and incorporated PSA plausibly support the existence of a limited fiduciary relationship concerning the Trust Funds. And because Count II alleges affirmative misuse and self-dealing with entrusted property beyond Ibanera's alleged failure to perform payment services, this Court agrees with the Magistrate Judge that the independent tort doctrine does not warrant dismissal at this stage.

***C. Whether Count VI States a Claim of Civil Theft Against Carbonara.***

Defendants next object to the Report's recommendation that the Motion be denied as to Count VI, Deltec's civil theft claim against Carbonara. Objs. 12–15. Defendants object to the Magistrate Judge's failure to separately analyze whether the allegations concerning Carbonara's personal conduct satisfy the elements of civil theft. Report at 28–30. And Defendants argue that Deltec's claim amounts to a contractual dispute over Ibanera's failure to return money, that the Second Amended Complaint does not plausibly allege the requisite criminal intent as to Carbonara, and that Carbonara cannot be individually liable because Ibanera (not Carbonara) received and holds the Trust Funds. Objs. 12–15. Deltec responds that Defendants previously raised the contractual nature of the dispute, Carbonara's individual liability, and the absence of dominion or control, and that the Objections principally add two cases and an asserted inconsistency with the dismissal of the aiding-and-abetting claims. Resp. 12–15. As with all claims to which Defendants have objected, this Court has undertaken a *de novo* review of the allegations in the Second Amended Complaint to determine whether it plausibly states a civil theft claim against Carbonara individually.

Florida's civil theft statute provides a civil remedy to a person injured by a violation of Florida's criminal theft statute. Fla. Stat. § 772.11(1). Under Section 812.014(1), a person commits theft if he "knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently," deprive the owner of a right to or benefit from the property or appropriate the property to his own use or to the use of another not entitled to it. Fla. Stat. § 812.014(1). Thus, to state a civil theft claim, a plaintiff must plausibly allege that the defendant knowingly obtained or used the plaintiff's property with the requisite felonious intent. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055–56 (Fla. 3d DCA 2008).

When the parties' relationship is contractual, however, the alleged theft must amount to more than a failure to pay a debt or perform a contractual obligation. *Id.* at 1055–56. An affirmative and intentional misappropriation of specifically identifiable property entrusted to the defendant may satisfy that requirement. *See Burke v. Napieracz*, 674 So. 2d 756, 758–59 (Fla. 1st DCA 1996). In *Burke*, the defendant was contractually obligated to receive specifically identifiable funds, deposit them into an identifiable account, and forward them to the plaintiff. *Id.* at 758. The court distinguished a mere failure to perform those contractual obligations from the defendant's alleged affirmative act of taking the entrusted funds for his own use, concluding that the latter constituted "a separate and independent tort." *Id.* at 758–59. The circumstances in *Pharma Funding, LLC v. FLTX Holdings, LLC* are similar to those at issue here. In *Pharma Funds*, the court recognized that conversion and civil theft claims may exist alongside a contract claim where entrusted funds are diverted for the defendant's own benefit or where the plaintiff's funds are provided to the defendant to be temporarily held in a segregated and identifiable account but are instead misappropriated. No. 20-CIV-21103,

2021 WL 1166051, at *6–7 (S.D. Fla. Mar. 8, 2021), report and recommendation adopted, 2021 WL 1165420 (S.D. Fla. Mar. 26, 2021) (Williams, J.).

The above decisions are persuasive here. Deltec does not merely allege that Ibanera failed to return money owed under the PSA. Rather, in the Second Amended Complaint, Deltec alleges that the Trust Funds remained Deltec's property, were held in segregated accounts for Deltec's sole benefit, and could not be used except pursuant to Deltec's instructions. Second Am. Compl. ¶¶ 34–36. Deltec further alleges that, notwithstanding those restrictions, Defendants converted approximately $18 million of the Trust Funds into USDC, transferred the USDC to third-party exchanges, deployed the assets for their own benefit, concealed the conversion and transfers, and continued displaying fiat balances that no longer existed. *Id.* ¶¶ 94–100, 150–54. These allegations plausibly describe affirmative misappropriation of entrusted property rather than a simple failure to satisfy a contractual payment obligation. *See Burke*, 674 So. 2d at 758–59; *Pharma Funding*, 2021 WL 1166051, at *6–7.

The foregoing allegations support the Magistrate Judge's conclusion that the alleged conduct goes beyond a contractual failure to return funds. The remaining question raised by Defendants' Objection is whether the Second Amended Complaint sufficiently connects Carbonara individually to the alleged civil theft. This Court concludes that it does. Deltec alleges that Carbonara personally decided in January 2025 that Ibanera would retain Deltec's Trust Funds rather than comply with Deltec's demands for their return. Second Am. Compl. ¶ 74. It further alleges that, on May 5, 2025, "at Carbonara's direction," Ibanera converted $18 million of the Trust Funds into USDC and, the following day, "at Carbonara's instruction," transferred those assets to an exchange to obtain returns for Ibanera. *Id.* ¶¶ 94,

96. Deltec also alleges that Carbonara subsequently directed the transfer of the USDC to another exchange, knowingly provided false explanations concerning the conversion and location of the funds, and participated in an ongoing scheme to prevent Deltec from recovering them. *Id.* ¶¶ 100–113. At this stage in the proceedings, these allegations are sufficient to state a claim against Carbonara for civil theft.

Moreover, Florida law does not immunize a corporate officer from liability for an intentional tort in which he personally participates merely because the property is formally held by the corporation. *See Pushko v. Klebener*, 399 F. App'x 490, 497 (11th Cir. 2010) (recognizing that a corporate officer who "commits or participates in the commission of a tort" may be individually liable and concluding that, even assuming the officer did not personally obtain the funds, the evidence could support civil-theft liability based on his use or attempted use of them); *White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357, 358 (Fla. 1st DCA 2005) (recognizing individual tort liability where a corporate officer or agent personally participates in the tort). Florida's theft statute defines "obtains or uses" to include not only taking property, but also "[e]xercising control over property" and "[m]aking any unauthorized use, disposition, or transfer of property." Fla. Stat. § 812.012(3)(a)–(b).

Defendants argue that the decisions in *Transcapital Bank v. Shadowbrook at Vero, LLC*, 226 So. 3d 856 (Fla. 4th DCA 2017), and *Rupp v. Schon*, 608 So. 2d 934 (Fla. 4th DCA 1992), require dismissal. In *Rupp*, the court concluded that the evidence did not establish conversion by the corporation and that the individual shareholder could not be liable merely because he owned the corporation that received the proceeds. 608 So. 2d at 935. Likewise, *Transcapital Bank* involved money paid pursuant to a contractual arrangement where the evidence did not establish a segregated fund, conduct independent of contractual nonperformance, criminal

intent, or personal receipt or use by the individual defendants. 226 So. 3d at 863–64. However, unlike those cases, in the Second Amended Complaint, Deltec alleges specifically identifiable property that remained its own, was required to be segregated, and was affirmatively converted and transferred at Carbonara's direction for purposes allegedly unauthorized by Deltec. Second Am. Compl. ¶¶ 74, 94, 96, 100, 150–55. As Deltec correctly observes, those allegations implicate "use" and "control" within the statutory definition even if the accounts through which the transactions occurred were maintained in Ibanera's name. Resp. 13–15.

Nor does the Report's dismissal of Counts III and V require dismissal of Count VI against Carbonara. The aiding and abetting claims depend upon Carbonara's alleged assistance in Ibanera's breach of duties underlying those torts. Count VI, by contrast, alleges a **direct intentional tort by Carbonara**. Civil theft does not require Deltec to establish that Carbonara independently owed it a contractual or fiduciary duty; the statutory prohibition arises from his alleged knowingly obtaining or using Deltec's property with the intent prescribed by Section 812.014(1). *See* Fla. Stat. §§ 772.11(1), 812.014(1). Accordingly, the absence of an independently pleaded contractual or fiduciary duty running from Carbonara to Deltec does not defeat Count VI.

Finally, Deltec has plausibly alleged the requisite felonious intent on the part of Carbonara. Criminal intent distinguishes civil theft from an ordinary conversion claim. *See Gasparini*, 972 So. 2d at 1056. Although a conclusory allegation of criminal intent would not suffice, intent may be inferred from the factual circumstances surrounding the alleged taking. *See Tambourine Comercio Internacional S.A. v. Solowsky*, 312 F. App'x 263, 278–79 (11th Cir. 2009) (per curiam). Here, Deltec alleges that Carbonara decided to retain property he knew belonged to Deltec; directed its unauthorized conversion into digital assets; directed its

transfer to third-party exchanges for Defendants' benefit; concealed the conversion while Ibanera continued representing that the funds remained in fiat currency; refused Deltec's repeated demands for return; and subsequently made allegedly false statements concerning the conversion, location, and use of the Trust Funds. Second Am. Compl. ¶¶ 74, 94–113, 150–55. Taken as true and viewed collectively, those allegations permit a reasonable inference that Carbonara knowingly exercised control over Deltec's property with the intent, at least temporarily, to deprive Deltec of its use or benefit. *See* Fla. Stat. § 812.014(1).

Accordingly, upon *de novo* review of the allegations concerning Carbonara's individual conduct, this Court concludes that the Second Amended Complaint plausibly alleges that Carbonara knowingly exercised control over Deltec's property with the intent required by Section 812.014(1). Therefore, this Court agrees with the ultimate recommendation in the Report that the Motion be denied as to Count VI against Carbonara.

### *D. Whether Count VIII States a Claim for Defamation Against Both Defendants.*

Defendants next object to the Magistrate Judge's recommendation that the Motion be denied as to Count VIII, Deltec's defamation claim against Ibanera and Carbonara. Objs. 15–19. Defendants argue that the Magistrate Judge wrongly concluded that Deltec states a claim for defamation by implication and contend that the challenged statements are substantially true, that Deltec is a limited-purpose public figure with respect to the FTX controversy, and that Deltec has not plausibly alleged actual malice. *Id.* Based upon a *de novo* review, this Court agrees with the Magistrate Judge's recommendation.

Under Florida law, a defamation claim requires "(1) publication; (2) falsity; (3) [that the] actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person;

(4) actual damages; and (5) [that the] statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Florida also recognizes defamation by implication, under which "literally true statements can be defamatory where they create a false impression." *Id.* Such a claim may arise where a defendant "juxtaposes a series of facts so as to imply a defamatory connection between them" or omits facts in a manner that creates a defamatory implication. *Id.* at 1108 (quotation omitted). Thus, the relevant inquiry is not limited to whether each statement, viewed in isolation, is literally true; otherwise accurate statements may be actionable when their arrangement conveys a materially false and defamatory message. *See id.* at 1106–08.

Defendants again largely repeat their arguments asserted in the underlying Motion. As Deltec points out in its Response, Defendants again invoke substantial truth, limited-purpose-public-figure status, and failure to plead actual malice; Deltec identifies Defendants' criticism of the Report's reliance on Zimmerman as the principal new point. Resp. 15–18. This Court finds that the Second Amended Complaint identifies allegedly defamatory statements attributable to each Defendant. *See* Second Am. Compl. ¶¶ 83–90, 168–76.

Defendants first argue that the statement posted on Ibanera's website associating Deltec with the FTX fraud is substantially true because public proceedings associating Deltec with persons involved in the FTX fraud actually existed. Objs. 16–18. But that does not resolve the defamation-by-implication theory Deltec pleads. Deltec does not allege that Defendants falsely stated that public proceedings existed. Rather, it alleges that Ibanera juxtaposed that fact with statements concerning "protective measures," an "ongoing investigation," collaboration with "regulatory authorities," money laundering, and fraud so as to imply both that the allegations concerning Deltec's connection to FTX were true and

that Deltec's transactions with Ibanera themselves involved illicit activity. Second Am. Compl. ¶¶ 171–76. Deltec identifies that distinction in its Response: the alleged "defamatory sting" is not that litigation existed, but that Defendants' publication implied the truth of those allegations and connected Deltec's current transactions to fraud, money laundering, sanctioned activity, or regulatory misconduct. Resp. 15–16.

Florida's substantial truth doctrine does not foreclose such a theory merely because one component of the publication is accurate. In *Jews for Jesus*, the court expressly recognized that a defendant may be liable for defamation by implication even if the defendant has individual "details right" but creates a false defamatory "gist" through juxtaposition or omission. 997 So. 2d at 1106–08. The Eleventh Circuit likewise acknowledges that, under Florida law, "literally true statements can be defamatory where they create a false impression." *Jacoby v. Cable News Network, Inc.*, No. 21-12030, 2021 WL 5858569, at *3 (11th Cir. Dec. 10, 2021) (per curiam) (quoting *Jews for Jesus*, 997 So. 2d at 1106). Consistent with these decisions, accepting Deltec's allegations as true and considering the publication as a whole, the existence of FTX-related proceedings does not establish the truth of the broader implication alleged in Count VIII.

Defendants contend that the decision in *Readon v. WPLG, LLC*, 317 So. 3d 1229 (Fla. 3d DCA 2021), requires a different result. In *Readon*, the court applied the substantial-truth doctrine because the alleged inaccuracies did not materially alter the "gist" or "sting" of the publication, and the publisher had confirmed that the accusations it reported had actually been made. *Id.* at 1234–37. Here, the alleged defamatory implication extends beyond the existence of third-party accusations. Deltec alleges that Defendants constructed their own message connecting Deltec's transactions with Ibanera to an ongoing investigation,

regulatory authorities, money laundering, and fraud. Second Am. Compl. ¶¶ 171–76. As set forth above, confirmation that FTX-related proceedings existed does not establish the truth of those additional statements or of the allegedly defamatory implication produced by their juxtaposition. *See Jews for Jesus*, 997 So. 2d at 1106–08.

Defendants next argue that Deltec is a limited-purpose public figure because the FTX collapse was a public controversy and Deltec conducted business with persons allegedly associated with FTX and was named in related litigation. Objs. 18–19. The relevant inquiry, however, is not simply whether the subject matter is one of public concern. A limited-purpose public figure is one who has "'thrust [itself] to the forefront of particular public controversies in order to influence the resolution of the issues involved.'" *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). The inquiry therefore requires consideration of the "nature and extent" of the plaintiff's participation in the particular controversy. *Id.* at 352. Consistent with *Gertz*, courts examine whether the plaintiff played a central role in the controversy and whether the challenged statements were germane to that role. *See Turner v. Wells*, 879 F.3d 1254, 1272–73 (11th Cir. 2018).

As the Magistrate Judge found, the allegations and materials properly considered at this stage do not establish that Deltec voluntarily injected itself into the FTX controversy, sought to influence its resolution, or otherwise assumed a central public role in that controversy. As discussed above, Defendants point to litigation in which Deltec was named and to alleged commercial relationships involving persons connected to FTX. Objs. 17–19. But being the subject of accusations or litigation does not, without more, establish the purposeful participation necessary for limited-purpose-public-figure status. *See Gertz*, 418 U.S. at 344–45, 352; *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 166–67 (1979) (rejecting

public-figure status where the plaintiff had been drawn into a controversy rather than voluntarily thrusting himself into it). Accordingly, this Court agrees with the Magistrate Judge's determination that the record does not establish at the pleading stage that Deltec is a limited-purpose public figure.

Moreover, as the Magistrate Judge also found, the Second Amended Complaint plausibly alleges actual malice. Actual malice requires knowledge that the defamatory statement was false or reckless disregard as to whether it was false. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Turner*, 879 F.3d at 1273. It is a subjective inquiry directed to the defendant's state of mind at the time of publication. *See St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Ill will or a desire to injure the plaintiff, standing alone, does not establish actual malice. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666–67 (1989).

The Magistrate Judge correctly concluded that Deltec alleges more than hostility. It alleges that, one day after Deltec filed this action, Carbonara authorized, approved, or directed a communication falsely accusing Deltec of having "committed sanctioned transfers" and seeking someone who could "run smear campaigns against Deltec." Second Am. Compl. ¶¶ 83–86. Deltec alleges that Defendants knew the sanctioned-transfers accusation was false. *Id.* ¶¶ 86, 90. It further alleges that, only days later, Carbonara directed Ibanera to publish the challenged website statement; that Defendants knew Deltec's relationship with Ibanera began years after the FTX collapse; and that Defendants lacked a factual basis for implying that Deltec's transactions with Ibanera involved fraud, money laundering, sanctioned activity, or a regulatory investigation. *Id.* ¶¶ 87–90, 171–76. Deltec therefore sufficiently alleges facts

bearing directly on Defendants' alleged knowledge of falsity when the challenged statements were made. Resp. 18–19.

Those allegations are sufficient at the pleading stage. The alleged request for a "smear campaign" does not establish actual malice merely because it suggests hostility toward Deltec. Rather, considered together with the allegations that Defendants knew the sanctioned-transfers accusation was false, knew of the temporal disconnect between Deltec's relationship with Ibanera and the FTX collapse, and nevertheless deliberately associated Deltec with fraud, money laundering, and an ongoing regulatory investigation, the allegation provides context supporting a reasonable inference that Defendants knew the allegedly defamatory statements or implications were false or recklessly disregarded their falsity. *See New York Times*, 376 U.S. at 279–80.

Whether Deltec is treated as a private plaintiff or, alternatively, is assumed at this stage to be a limited-purpose public figure, the Second Amended Complaint plausibly states a claim for defamation against Ibanera and Carbonara. Therefore, this Court agrees with the Magistrate Judge's ultimate recommendation that the Motion be denied as to Count VIII.

***E. The Unobjected-to Recommendations Are Not Clearly Erroneous.***

Defendants do not specifically object to the recommendations as to Counts I, III, IV, V, Count VI as asserted against Ibanera, and Count VII. This Court therefore reviews those portions of the Report for clear error.

As to Count I, Defendants did not seek dismissal under Rule 12(b)(6), and the Magistrate Judge recommends that Ibanera be required to answer Deltec's breach of contract claim. Report at 21 n.7, 43. No party objects to that recommendation.

The Magistrate Judge further recommends dismissing with prejudice Count III, for aiding and abetting breach of fiduciary duty against Carbonara, and Count V, for aiding and abetting conversion against Carbonara. *Id*. at 31–35, 42–43. In the Report, the Magistrate Judge concludes that the necessary separation between the principal tortfeasor and the alleged aider and abettor is absent where Ibanera allegedly acted through Carbonara, the same corporate officer alleged to have provided the assistance. *Id.* at 31–34. The Magistrate Judge also determined that Deltec cannot recast those claims as direct tort claims against Carbonara because Deltec does not plausibly allege that Carbonara independently owed it the fiduciary or possessory duties underlying Counts III and V. *Id.* at 34–35. Neither party objects to these recommendations.

The Magistrate Judge also recommends denying the Motion to Dismiss as to Count IV, Deltec's conversion claim against Ibanera. *Id.* at 28–30, 42–43. In the Second Amended Complaint, Deltec alleges that Ibanera exercised unauthorized dominion and control over specifically identifiable funds belonging to Deltec by, among other things, converting the funds into digital tokens, transferring the assets to third-party exchanges, using them for its own benefit, concealing their status and location, and refusing to return them after demand. Second Am. Compl. ¶¶ 94–100, 135–41. The Magistrate Judge determined that these allegations plausibly allege conversion independent of Ibanera's alleged failure to perform its contractual obligations. Report at 28–30.

And, although Defendants request dismissal of Count IV in the conclusion of their Objections, Defendants do not identify any specific factual finding or legal conclusion concerning the Report's conversion analysis and offer no argument explaining why that analysis is erroneous. *See* Objs. 2–19. Rather, Defendants identify their substantive objections

as concerning Rule 19, Count II, Count VI against Carbonara, and Count VIII. *Id.* at 2. A request for relief in the conclusion, without an accompanying objection identifying an asserted error in the Report, does not trigger *de novo* review.

Similarly, Defendants do not specifically object to the Magistrate Judge's recommendation that Count VI proceed against Ibanera. Their objection is expressly directed to "[t]he Civil-Theft Claim (Count VI) Against Carbonara" and they argue that, "even if a civil-theft claim against Ibanera survives," the allegations are insufficient as to Carbonara. Objs. 12–15. Although the Report addresses Count VI as asserted against both Defendants and notes that the alleged conversion occurred "at Defendant Carbonara's direction," Defendants' specific objection concerns whether the allegations establish Carbonara's individual liability. Report at 28–30. That issue is addressed above. The recommendation concerning Count VI as asserted against Ibanera is therefore unobjected to.

Finally, the Magistrate Judge recommends dismissal of Count VII, for unjust enrichment against Ibanera and Carbonara, with prejudice. *Id.* at 35–36, 42–43. The Magistrate Judge determined that the undisputedly valid PSA governs the same subject matter as the unjust enrichment claim and that Deltec does not allege that it directly conferred a separate benefit on Carbonara. *Id.* at 35–36. Neither party objects to that recommendation.

Having reviewed these portions of the Report, the underlying Motion and related briefing, and the pertinent portions of the record, this Court finds no clear error. Accordingly, the Magistrate Judge's recommendations concerning Counts I, III, IV, V, Count VI as asserted against Ibanera, and Count VII are **AFFIRMED AND ADOPTED**.

## IV. CONCLUSION

Upon *de novo* review, this Court agrees with Magistrate Judge D'Angelo that IPL is not a required and indispensable party under Rule 19, Count II states a claim for breach of fiduciary duty, and Count VIII states a claim for defamation. Defendants correctly observe that the Report's ultimate civil theft analysis focuses on Ibanera and that the Magistrate Judge did not separately analyze Carbonara's individual liability. However, for the reasons set forth above, this Court concludes that the allegations concerning Carbonara's personal direction and participation are sufficient to state a civil theft claim against him. Therefore, Defendants' objections to the Magistrate Judge's recommendation regarding Count VI are overruled.

This Court has also reviewed for clear error the Magistrate Judge's unobjected-to recommendations concerning Counts I, III, IV, V, Count VI as asserted against Ibanera, and Count VII and finds none. Therefore, the Report is affirmed and adopted as supplemented herein. Counts III, V, and VII shall be dismissed with prejudice, and Counts I, II, IV, VI, and VIII remain pending.

Accordingly, for the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendants Ibanera LLC and Michael Carbonara's Objections to the Report **[ECF No. 191]** are **OVERRULED**.
2. Magistrate Judge Ellen F. D'Angelo's Report and Recommendation **[ECF No. 185]** is **AFFIRMED AND ADOPTED** and **INCORPORATED BY REFERENCE** into this Order for all purposes, including appellate review.

3. Defendants' Motion to Dismiss Second Amended Complaint **[ECF No. 158]** is **GRANTED IN PART AND DENIED IN PART** as follows:

The Motion is denied to the extent Defendants seek dismissal of this action under Federal Rules of Civil Procedure 12(b)(7) and 19 based on the absence of Ibanera Private Limited;

The Motion is granted as to Counts III, V, and VII of the Second Amended Complaint [ECF No. 154], and Counts III, V, and VII are **DISMISSED WITH PREJUDICE**.

The Motion is denied as to Counts II, IV, VI, and VIII of the Second Amended Complaint [ECF No. 154].

Count I of the Second Amended Complaint [ECF No. 154], which Defendants did not move to dismiss under Rule 12(b)(6), remains pending.

It is further

**ORDERED** that within **twenty-one (21) days** of the date of this Order, Plaintiff shall file a Third Amended Complaint that removes Counts III, V, and VII and otherwise conforms the pleading to this Order. Plaintiff shall not add new claims, parties, or factual allegations. Defendants shall respond to the Third Amended Complaint within the time prescribed by the Federal Rules of Civil Procedure.

**DONE AND ORDERED** in the Southern District of Florida, this 26th day of September, 2026.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**